No. 95-4074

Jerry P. Comstock,                    *
                                      *
          Appellant,                  *
                                      *    Appeal from the United States
     v.                               *    District Court for the
                                      *    Western District of Missouri.
Shirley S. Chater,                    *
Commissioner of Social                *
Security Administration,              *
                                      *
          Appellee.                   *

                Submitted:  May 17, 1996

                 Filed:  August 5, 1996

Before BOWMAN, HEANEY, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

     Jerry Comstock appeals the district court's[1] order affirming the denial of his application for Social Security disability benefits.  We affirm.

                                I.

     Jerry Comstock was forty-one years old when he first applied for Social Security disability benefits in 1982.  Comstock had completed the eleventh grade and had worked as a machinist, janitor, dock hand, gas station attendant, and golf course grounds keeper.  In his claim for benefits, he alleged that he became disabled as of April 7, 1981, due to a back injury occurring on that date.  His claim was denied initially and upon

_____

     [1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

reconsideration.  In 1985, Comstock again applied for disability benefits, alleging a disability onset date of April 21, 1985, because of back problems.  This application was also denied.  Finally, in Comstock's third application for disability benefits in 1986, he was found disabled as of September 30, 1986, and was awarded benefits.

In 1989, Comstock requested that the denial of his first application be reopened.  The Social Security Administration denied his application originally and upon reconsideration.  After conducting a hearing, the Administrative Law Judge (ALJ) also denied the claim, finding that Comstock was not disabled during the relevant period beginning April 7, 1981, and continuing through September 30, 1986.  The Appeals Council denied Comstock's request for review and the district court affirmed the ALJ's decision.  Comstock appeals, alleging that the ALJ erred in (1) finding that Comstock engaged in substantial gainful employment from 1983 through 1986; (2) failing to properly consider Comstock's combination of impairments; (3) discrediting Comstock's testimony regarding his subjective complaints of pain; and (4) finding that Comstock could return to his past relevant work as a gas station attendant.

## II.

A denial of disability benefits will be upheld if it is supported by substantial evidence on the record as a whole.  Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996).  Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision.  Id.

Under the Social Security disability program, a claimant is considered disabled if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 1382c(a)(3)(A).  The first

step in determining whether a claimant is disabled is to ascertain whether the claimant engaged in substantial gainful employment during the relevant period. 20 C.F.R. §§ 404.1520(b), 416.920(b). If a claimant engages in substantial gainful activity, there can be no finding of disability, even if the claimant does in fact have an impairment. Id.; Thompson v. Sullivan, 878 F.2d 1108, 1110 (8th Cir. 1989).

To qualify as substantial gainful activity, the work activity must be both substantial and gainful. 20 C.F.R. § 416.972. Substantial work includes physical or mental work, even if done on a part-time basis. 20 C.F.R. § 416.972(a). Gainful work merely means work done for compensation. 20 C.F.R. § 416.972(b). In determining whether a claimant is substantially gainfully employed, criteria such as the claimant's level of earnings from the work activity and whether the claimant is working in a special or sheltered environment are relevant. 20 C.F.R. § 404.1574(a). Under the regulations, substantial gainful activity is presumed if the claimant's average earnings are greater than $300 per month.[2] 20 C.F.R.§ 404.1574(b)(2)(vi).

The ALJ found that Comstock engaged in substantial gainful employment during 1983, 1984, 1985, and a significant portion of 1986. There is substantial evidence contained in the record to support the ALJ's conclusion. First, Comstock's earnings in 1983 and 1984 exceeded $300 per month. Although Comstock did not submit a tax return for 1985, he testified at the hearing that he continued to work at his job as a gas station attendant until the station closed in the fall of that year. In 1986, Comstock continued to earn a significant amount of income until his onset disability date of September 30. In any event, even assuming that Comstock did not engage in any substantial gainful employment during the relevant period, we find that he was not entitled to

---

[2]This amount applies for years after 1979 and before 1990.

-3-

benefits for the reasons discussed below.

If a claimant has not been substantially gainfully employed during the relevant period, the next step in making a disability determination involves deciding whether the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant suffers from an impairment, a determination must be made as to whether that impairment meets or equals an impairment listed in the regulations; if so, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) and Part 404, Subpart P, Appendix 1. The ALJ found that Comstock had the following severe impairments: chronic low back pain syndrome with history of L5,S1 disc excision, tendinitis of the left shoulder, obesity, hypertension, dysthymic disorder, and alcohol abuse. The ALJ concluded, however, that none of Comstock's impairments, singly or in combination, met any of the impairments listed in the regulations. Finally, the ALJ determined that Comstock could perform light, and probably medium work, including his past relevant work as a gas station attendant.

The objective medical evidence in the record supports the ALJ's determination that Comstock's combined impairments did not constitute a disability as defined in the regulations. The record reveals that Comstock suffered a back injury in 1981 for which he underwent surgery. X-rays taken of Comstock's lumbar spine in 1982 showed no significant abnormalities, except for mild narrowing at the L5,S1 intervertebral disc space. Although there was some conflicting evidence, most of the tests performed on Comstock during this period revealed that Comstock's motor and sensory components of the nervous system were intact, that he had only slight limitation of flexion and extension, and that his reflexes were normal.

In March 1982, Dr. Tietgen, Comstock's treating physician, noted that Comstock "could get on and off the examination table

without difficulty" and he "carried himself well." He recommended, however, that Comstock "avoid heavy lifting, working in a bent over position or long periods of standing." In June 1982, Dr. Hopkins agreed that Comstock should avoid physical exertion and long periods of standing, but concluded that Comstock should be able to perform some type of gainful employment. In an examination conducted by Dr. Harper in August 1982, Comstock was able to heel and toe walk normally and displayed no weakness in his motor examination. All of the residual functional capacity assessments performed in 1982 and 1986 indicated that Comstock could stand and/or walk for six hours and sit for six hours in a normal workday, as well as lift twenty-five pounds frequently and fifty pounds maximum.

From October 1982 through 1984, it appears that Comstock failed to seek significant medical treatment for back pain. After Comstock resumed treatment in April 1985 following a car accident, his doctors noted a slight limitation of motion in Comstock's spine and diagnosed Comstock with mild degenerative disc disease in the lower lumbar spine. In January 1986, Dr. Quinn concluded that Comstock's condition was not incapacitating. He recommended conservative treatment, including physical therapy and a back exercise program. A lumbar myelogram performed in March 1986 confirmed narrowing at L5,S1 but was otherwise unremarkable. The medical evidence supports the ALJ's finding that Comstock's back problems did not equal a listed impairment in the regulations.

Comstock argues that the ALJ failed to properly consider his mental impairments. Comstock was diagnosed with alcohol abuse and dysthymic disorder in a psychological evaluation performed in October 1982. The evaluation recommended that Comstock seek professional treatment and enter a detoxification program.

Comstock testified at the hearing that he attended Alcoholics Anonymous for approximately six months. Aside from that, he

presented no evidence that he sought regular medical treatment for this problem.  Moreover, other than an occasional bout of gastritis, which was controlled by antacids, there was no evidence that Comstock's alcoholism affected his health or ability to work.  Comstock's actual work history supported the ALJ's determination that his alcoholism was controllable. See Mapes v. Chater, 82 F.3d 259, 263 (8th Cir. 1996).

In addition, there was no evidence in the record that Comstock sought regular medical treatment for his dysthymia.  Furthermore, three psychiatric evaluations done on Comstock in 1986 agreed that he was not suffering from a disability.  One evaluation noted that Comstock's mental impairments were not severe, while the other two noted that Comstock had no impairments.  We agree that there was substantial evidence to support the ALJ's determination that Comstock's combined impairments were not disabling.

Comstock next contends that the ALJ erred in finding that his subjective complaints of pain were not credible.  We find that the ALJ properly applied the guidelines set out in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) in evaluating Comstock's subjective complaints. The ALJ found that Comstock's complaints were inconsistent based on the objective medical evidence, lack of regular treatment and medication, work activity, and past work history.

We agree that the lack of objective medical evidence contradicted Comstock's claims of disabling pain.  See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (ALJ can discount claimant's complaints of pain when medical evidence failed to establish significant back problem).  Moreover, the ALJ was entitled to discount Comstock's complaints based on his failure to pursue regular medical treatment.  See Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (failure to seek regular treatment or obtain pain medication inconsistent with complaints of disabling

pain).  The ALJ pointed to a 1982 report by Dr. Hopkins which noted that Comstock was taking "no medicine steadily and is not under regular care." In addition, Comstock failed to seek regular treatment for his back pain from late 1982 through 1984.  At the hearing, Comstock stated that he took aspirin, used a whirlpool tub, and had his wife rub ointment on his back to alleviate the pain.  The ALJ properly found that these measures did not support a claim of disabling pain.  See id. (disabling pain not indicated when claimant merely took hot showers and used Advil and aspirin to relieve pain).

In further support of his decision, the ALJ found that Comstock's work activity belied his claim of disabling pain.  See Smith, 987 F.2d at 1374-75 (claimant's extensive daily activities, including performance of pastoral duties, inconsistent with complaints of disabling pain).  Not only did Comstock work as a gas station attendant from 1983 through 1985, he also had a full-time job for several months during 1986 which required him to dig around telephone poles.  Finally, the ALJ noted that Comstock's prior work history was not "particularly notable and has been characterized by fairly low earnings and some significant breaks in employment."  We agree that these factors, taken together, cast doubt on Comstock's complaints of disabling pain.

Comstock also argues that the ALJ erred in concluding that he could return to his past relevant work as a gas station attendant.  The Dictionary of Occupational Titles classifies a gas station attendant as medium work.  It requires occasional lifting of twenty to fifty pounds and frequent lifting of ten to twenty-five pounds, along with occasional bending.  At the hearing, Comstock stated that his basic responsibilities at the gas station included pumping gas, checking oil, and running the cash register.  On vocational reports he submitted prior to the hearing, however, he listed additional duties such as changing tires, repairing minor mechanical problems, and lifting and carrying objects weighing from

twenty-five to fifty pounds such as batteries, tires, and oil.  The ALJ concluded that Comstock could "perform at least light work as he described it at the hearing and probably medium work as he described in the record." In light of Comstock's work activity from 1983 through 1986, combined with the findings in his residual functional capacity assessments, we agree that Comstock retained the ability to work as a gas station attendant.

The order is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.