_____

No. 95-3186
_____

Gregory Andler,                         *
                                        *
          Appellant,                    *
                                        *  Appeal from the United States
     v.                                 *  District Court for the
                                        *  District of Minnesota.
Shirley S. Chater,                      *
Commissioner of Social                  *
Security Administration,                *
                                        *
          Appellee.                     *


                           _____

          Submitted:  June 14, 1996

             Filed:  November 21, 1996
                           _____

Before BOWMAN, JOHN R. GIBSON, and BEAM, Circuit Judges.
                           _____

BEAM, Circuit Judge.


     Gregory Andler appeals the denial of Social Security benefits.
Because we find that Andler's two brief periods of employment in a twenty-
four year period of disabling mental illness were unsuccessful work
attempts, we reverse.


I.   BACKGROUND


     Andler is forty-nine years old.  He has a high-school education and
previous work experience as a carpenter's helper.  He is a Vietnam veteran
and has been diagnosed as suffering from post-traumatic stress disorder
(PTSD).  He applied for disability benefits on October 10, 1991, alleging
a disability onset date of December 1972.  Andler's insured status ran out
on March 31, 1977, so the issue is whether he was disabled before that
time.

After his application was denied both initially and on reconsideration, Andler appealed and a hearing was held before an administrative law judge (ALJ).  At the hearing, Andler testified that he has not been able to work since 1972.  He stated that for several years he spent most of his time in a root cellar.  His mother and sister both testified that Andler was withdrawn and reclusive and lived "like an animal."  Andler's mother referred him for psychiatric help in 1981, after he stopped working; sold all of his furniture; lived without heat, electricity and water for extended periods of time; and lost his house for failure to pay taxes.  He was treated as an inpatient at the St. Cloud Veteran's Administration Hospital in 1984 and at both St. Cloud and Topeka Veteran's Administration Hospitals in 1991, when his condition was aggravated by the Gulf War.

A psychiatrist also testified at the hearing.  He stated that Andler suffered from a medically determinable mental disorder in 1977.  His diagnosis was PTSD.  He characterized this as a personality disorder under Section 12.08 of 20 C.F.R. Pt. 404, Subp't P, App. 1, (the Listings).[1]  He also stated that Andler exhibited symptoms of autistic thinking, pathologically inappropriate suspiciousness or hostility, persistent disturbance in mood or affect, intense anxiety, hypervigilance and intrusive memories of past traumatic events.  He further testified that the impairment has a marked impact on Andler's ability to perform

---

[1]Section 12.08 describes a presumptively disabling condition. A "personality disorder" is characterized by personality traits that are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress.  These are evidenced by deeply ingrained maladaptive patterns of behavior associated with: seclusiveness or autistic thinking; pathologically inappropriate suspiciousness or hostility; oddities of thought, perception, speech, and behavior; persistent disturbances of mood or affect; pathological dependence, passivity, or aggressivity; or intense and unstable interpersonal relationships and impulsive and damaging behavior that result in functional restrictions.  The Listings § 12.08.

activities of daily living; a marked impact on maintaining social functioning; frequent deficiencies of concentration; and repeated episodes of deterioration.[2] Additionally, he stated it is not unusual for medical treatment to be sought years after the onset of symptoms in PTSD cases.

The record contains evidence that corroborates the psychiatrist's testimony. Another psychiatrist, Dr. Arnold, evaluated Andler in 1992 and reported similar findings dating back to 1972. Andler has also received a one-hundred percent disability rating from the Veteran's Administration (VA).[3] In addition to PTSD, the medical records contain evidence of major depression, anxiety, paranoia, suicidal ideation, mixed personality disorder, and passive/aggressive and dependent personality disorders. The record also contains evidence that at one time Andler was considered dangerous.

In 1988 and 1989, at the behest of a VA counselor, the Duluth Public Schools hired Andler as a temporary carpenter's helper. He

---

[2]These findings correspond with the Paragraph "B" criteria (or functional limitations) of the Listings. See 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.08(B)(1)-(4).

[3]Of course, the standards for VA disability do not mirror those for Social Security disability. For a one-hundred percent disability rating from the VA, a claimant with a psychoneurotic disorder must show:

> The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment.

38 C.F.R. § 4.132

worked there for less than three months each summer and apparently performed satisfactorily.  He was allowed, however, to take several hours off each week to visit his VA counselor.  He earned $6,360.16 in 1988 and $5,977.84 in 1989.

After the hearing, the ALJ found Andler's temporary work to be substantial gainful activity and thus held that Andler could not "be found entitled to a period of disability at any time prior to March 31, 1977, based upon his work and earnings subsequent to expiration of his insured status."  The Appeals Council affirmed the decision, as did the district court, rejecting the contention that the temporary work constituted an unsuccessful work attempt and should not bar an award of benefits.

On appeal, Andler contends that the ALJ and the district court erred in determining that his brief periods of employment amounted to substantial gainful activity.[4]

## II.  DISCUSSION

Our task on review is to determine whether substantial evidence in the record as a whole supports the Commissioner's denial of benefits to Andler.  Siemers v. Shalala, 47 F.3d 299, 301 (8th Cir. 1995).  Substantial evidence is that which a reasonable mind would consider adequate to support the ALJ's decision.  Comstock v. Chater, 91 F.3d 1143, 1145 (8th Cir. 1996).   Our

---

[4]In light of our disposition, we will not address Andler's contentions that:  (1) his "period of disability" should be extended; and (2) his work constituted a trial work period.  In connection with the latter argument, we note that we have recently held that a claimant may be entitled to a trial work period before an award of benefits on a showing of entitlement to those benefits. Newton v. Chater, 92 F.3d 688, 693-94 (8th Cir. 1996).  Because the trial work period may not begin before an application for benefits is filed, id. at 693, the holding would not apply to Andler.

review encompasses evidence that detracts from the decision as well as evidence that supports it.  Id.

Under the Social Security disability program, a claimant is considered disabled if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  Id. (citations omitted).  The first step in determining whether a claimant is disabled is to ascertain whether the claimant engaged in substantial gainful employment during a period of claimed disability.  Id.  If a claimant engages in substantial gainful activity, there can be no finding of disability, even if the claimant does in fact have an impairment.  Id.

Work will normally be considered "substantial gainful activity" if earnings average more than $300.00 a month in calendar years between 1979 and 1990.  Nettles v. Sullivan, 956 F.2d 820, 822 (8th Cir. 1992).  Certain activities, however, which last a short time may be considered "unsuccessful work attempts."  Id.  These activities may not count as substantial gainful activities so as to terminate a period of eligibility for disability payments.  Id.  The "unsuccessful work attempt" concept was designed as an equitable means of disregarding relatively brief work attempts that do not demonstrate sustained substantial gainful employment. Social Security Ruling 84-25, 1984 WL 49799 (1984).

A work effort that lasts less than three months can be considered an unsuccessful work attempt when a claimant is unable to perform work for more than a short time, and must quit due to an impairment, or due to the removal of special conditions related to the impairment that are essential to the further performance of the work.  Sample v. Shalala, 999 F.2d 1138, 1142 (7th Cir. 1993); 20 C.F.R. § 404.1574(a)(1).  Examples of such special conditions occur when claimants:  (1) require and receive special assistance from other employees in performing the job; (2) are allowed to work

-5-

irregular hours or take frequent breaks; (3) are provided with special equipment or are assigned work especially suited to the impairment; (4) are able to work only within a framework of specially arranged circumstances, such as where other persons helped them prepare for or get to or from work; (5) are permitted to perform at a lower standard of productivity or efficiency than other employees; or (5) are granted the opportunity to work, despite a handicap, because of a family relationship, past association with the firm, or other altruistic reason. Social Security Ruling 84-25(4)(a)-(f), 1984 WL 49799 at *2.

Work efforts that last between three and six months require an additional showing that either there were frequent absences due to the impairment; the work was unsatisfactory due to the impairment; the work was done during a period of remission; or the work was done under special conditions. Social Security Ruling 84-25(2)(a)-(d), 1984 WL 49799 at *2; Nettles, 956 F.2d at 822.

We are mindful that "`[i]t is inherent in psychotic illnesses that periods of remission will occur,'" and that such remission does not mean that the disability has ceased. Miller v. Heckler, 756 F.2d 679, 681 n.2 (8th Cir. 1985) (per curiam) (quoting Dreste v. Heckler, 741 F.2d 224, 226 n.2 (8th Cir. 1984) (per curiam)). Indeed, "one characteristic of mental illness is the presence of occasional symptom-free periods." Poulin v. Bowen, 817 F.2d 865, 875 (D.C. Cir. 1987). Although the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim. Id. Unlike many physical impairments, it is extremely difficult to predict the course of mental illness. Id. Symptom-free intervals and brief remissions are generally of uncertain duration and  marked by the impending possibility of relapse. Id.

The Commissioner explicitly acknowledges in the regulations relating to mental illness that total disability is not incompatible with alternating phases of active illness. Accordingly,

> An individual's level of functioning may vary considerably over time. The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time. . . . Some individuals may have attempted to work or may actually have worked during the period of time pertinent to the determination of disability.

20 C.F.R. Pt. 404, Subp't P, App. 1, § 12.00(D). The Commissioner also focuses on the special problems associated with the chronically mentally ill, noting, "[i]ndividuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." Id. at § 12.00(E). "Such individuals may be much more impaired for work than their signs and symptoms would indicate." Id.

We have no difficulty finding, on this record, that Andler's employment constitutes an "unsuccessful work attempt" under the regulations. The ALJ and the district court erred in finding that Andler was not working under "special conditions" that enabled him to function in the workplace. Andler performed the job under special circumstances-- visits to a VA counselor every week. Visits to counselors are not ordinarily provided in the workplace. Although that circumstance is not enumerated in Social Security Ruling 84-25, it is sufficiently analogous to constitute a special condition related to the impairment that was essential to the performance of the work.

We also find the temporary nature of the job constituted a special condition under the facts of this case. There is overwhelming evidence that Andler is incapable of performing work for sustained periods. Again, though this condition is not listed in the Ruling, we find it sufficiently analogous to amount to a special condition.[5]

The record also shows that the work occurred in a period of remission--occurring as it did between Andler's two periods of hospitalization. Under the Ruling, the requirements for showing an unsuccessful work attempt are less stringent if the work lasts less than three months. Andler has shown, because the work was done in a period of remission, that he would even meet the more stringent requirements of an unsuccessful work attempt if the work had lasted more than three months. We add that this finding is not at odds with our other decisions that have found substantial gainful activity. See, e.g., Nettles, 956 F.2d at 822; Cooper v. Secretary of Health and Human Servs., 919 F.2d 1317, 1321 (8th Cir. 1990); Zenker v. Bowen, 872 F.2d 268, 272 (8th Cir. 1989). None of these cases involved long-term severe and disabling mental illness.

Because we find Andler disabled on this record, we must consider the remedy. It is beyond dispute that Andler would have been found disabled if not for the finding that substantial gainful activity barred an award of benefits.[6] If the record presented to

---

[5]In connection with this finding, we note that Social Security Rulings are intended to bind only the Social Security Administration and have neither the force nor effect of law or Congressionally promulgated regulations. Newton v. Chater, 92 F.3d at 693-94. Thus, to the extent that agency rulings are inconsistent with statutory provisions, agency rulings will not be followed. Id. at 693.

[6]The ALJ noted that "it is now clear the claimant is apparently disabled secondary to a severe mental impairment . . . ." Administrative Record at 71. The District Court, adopting the findings and recommendations of a magistrate judge, also noted Andler's long history of mental illness. Andler v. Shalala, No. 5-93-177, Report and Recommendation at 4 n.3 (D. Minn. Feb. 14, 1995).

the ALJ contains substantial evidence supporting a finding of disability, a reviewing court may reverse and remand the case to the district court for entry of an order granting benefits to the claimant. Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984). In this case, Andler has been consistently diagnosed as having severe disabling PTSD dating back to 1972, as a result of trauma suffered serving in Vietnam. Under the circumstances, we find further hearings would merely delay benefits; accordingly, an order granting benefits is appropriate. Id.

## III. CONCLUSION

For the reasons stated above, we remand to the district court for entry of an order awarding Andler disability benefits.[7]

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]The Commissioner has filed a motion to strike the arguments presented in Andler's reply brief. Because we did not reach arguments presented in the reply brief, the motion is denied as moot.