Steven W. BURNS, SSN 566–
23–7523, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. 97–3384–CV–S–66BA–SSA.

United States District Court,
W.D. Missouri,
Southern Division.

July 20, 1998.

Bruce K. Kirby, Schmidt, Kirby & Sullivan, P.C., Springfield, MO, for plaintiff.

David Detar Newbert, U.S. Attorney's Office, Brett Leopold, Stinson, Mag & Fizzell, Kansas City, MO, for defendant.

## ORDER

KNOX, United States Magistrate Judge.

### Jurisdictional Statement

This is a proceeding under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff filed an application for Supplemental Security Income (SSI) benefits based on disability under Title XVI. (Tr. 61–66.) His application was denied initially and on reconsideration (Tr. 67–72, 75–80). An administrative hearing was held on September 10, 1996 (Tr. 34–60). On November 22, 1996, the administrative law judge (ALJ) rendered a decision, finding that plaintiff was not under a disability as defined in the Social Security Act (Tr. 12–24). On June 27, 1997, after considering additional medical evidence (Tr. 214–238), the Appeals Council of the Social Security Administration denied plaintiff's request for review (Tr. 4–5). The decision of the ALJ is the final decision of the Commissioner.

Plaintiff filed a complaint, pursuant to Local Rule 9.1, challenging the decision of the Commissioner, which denied benefits.

### Statement of Facts

Plaintiff was forty years old at the time of the administrative hearing (Tr. 38). He had a high school education (Tr. 53). Plaintiff served in the United States Army from 1976 to 1978 and worked in communications (Tr. 39). Plaintiff notes that he worked as a journeyman tile setter in the construction industry from 1974 to 1979 (Tr. 100). Plaintiff injured his back in a work-related accident in 1979 (Tr. 142). He received Aid to Families with Dependent Children (AFDC) from the State of California from 1980 through 1987. Plaintiff worked for three months at Axcel Rebuilders as a parts polisher in 1980. He worked as a tile setter for two months in 1989. He worked for six months as a meat-shipping clerk from July until December 1991, when he re-injured his back (Tr. 84, 148). Plaintiff reported at that time that he had fully recovered from his 1979 injury with no symptoms of significance which required treatment from 1988 through 1991 (Tr. 148). Plaintiff received a lump sum worker's compensation award of $17,000 as a result of the 1991 injury (Tr. 50). Plaintiff worked from October 1994 to January 1995 as a protective floor cover helper (Tr. 84). Plaintiff alleges an onset date of February 2, 1994 (Tr. 36). Plaintiff alleges that he cannot work due to pain from his low back injury (Tr. 41).

Beginning in October 1984, Richard Cobden, M.D., an orthopedic surgeon, treated plaintiff for pain in his lower back stemming from the 1979 injury. On October 1, 1984, Dr. Cobden noted that plaintiff had no leg length discrepancy and no muscle atrophy, and that his X-rays revealed a slight narrowing at the L4 and L5–S1 disc spaces. (Tr. 142, 144.) A CT scan performed on January 17, 1985, revealed a possible mild bulge to the left at L4–L5, but no clear herniated disc. On January 25, 1985, Dr. Cobden opined that plaintiff's back injury precluded him from working for three months. (Tr. 143.) By April 2, 1985, the doctor diagnosed plaintiff with chronic strain with radiculitis, and opined that plaintiff could do light work. Plaintiff's condition precluded heavy lifting, bending and stooping. (Tr. 144–45.) On October 18, 1985, plaintiff saw Dr. Cobden for pain in his right leg and for general weakness. Plaintiff's EMG showed a borderline abnormal study at L5–S1 involving the peroneus longus muscle on the right. He had diminished sensation in both the L5 and S1 distribution on the right. Dr. Cobden prescribed medication and a lumbosacral support. (Tr. 140.) Plaintiff had a normal lumbar myelogram on February

2, 1986 (Tr. 139). Dr. Cobden treated plaintiff with trigger point injections on January 21, 1985, March 12, 1987, April 3, 1987, May 14, 1987, and January 4, 1988 (Tr. 141, 136). At plaintiff's March 14, 1987, examination, Dr. Cobden told plaintiff to continue his exercise program (Tr. 136).

Plaintiff consulted Gary Rapaport, M.D., on August 20, 1991. Dr. Rapaport diagnosed sacroiliac strain and lumbar strain, and prescribed conservative treatment, which included physical therapy. On October 8, 1991, Dr. Rapaport noted that plaintiff had severe lumbar spasm, for which he prescribed anti-inflammatory medication and continued physical therapy. (Tr. 150.) Dr. Rapaport recommended modified duty for plaintiff from November 15 to December 9, 1991, at which time the doctor determined that plaintiff would not be able to return to his previous occupation. On January 3, 1992, Dr. Rapaport recommended that plaintiff receive vocational rehabilitation. (Tr. 151.)

On February 6, 1992, orthopedist William J. Taylor, M.D., examined plaintiff in connection with the worker's compensation proceeding arising from his August 1991 injury. Dr. Taylor noted that plaintiff's MRI revealed disc degeneration at L2–L3 and L4–L5 and L5–S1. Plaintiff had a 79 percent limitation in his lumbar spine range of motion. Dr. Taylor diagnosed degenerative disc disease with significant decreased range of motion and paravertebral muscle spasm. Dr. Taylor felt that plaintiff had constant moderate to severe pain, but that his condition was not permanent. (Tr. 148–153.)

In April 1992, Gary Wisner, M.D., an orthopedic surgeon, recommended that plaintiff remain on disabled status and receive a TENS unit. He also recommended that plaintiff continue formal physical therapy and he urged plaintiff to "make his physical therapy appointments" if at all possible. (Tr. 154, 155.)

On July 7, 1995, Charles J. Ash, M.D., an orthopedic surgeon, performed a consultative examination for disability purposes. He observed that plaintiff did not walk with a limp or list. He had equal leg lengths, and could heel-toe walk satisfactorily. He had normal range of motion in his cervical spine. He had decreased flexion and extension in his thoracic and lumbar spine. Plaintiff had no limitations in his upper and lower extremities. Dr. Ash diagnosed probable degenerative disc disease in the lumbosacral spine without neurological deficit, but with limited motion and sciatica. Dr. Ash specifically opined that plaintiff was not permanently and totally disabled. (Tr. 206–07.)

On July 27, 1995, plaintiff was examined by Michael Ball, D.O., for disability purposes. Dr. Ball observed no swelling or inflammation in the lumbosacral area, but noted that plaintiff had a slight reduction in his range of motion. Dr. Ball diagnosed chronic low back pain secondary to degenerative joint and disc disease of the lumbar spine. (Tr. 165–69.)

On August 16, 1995, Albert Decker, M.D., did a Residual Physical Functional Capacity Assessment of plaintiff (Tr. 112–17). Dr. Decker found that plaintiff had the following functional capacity: occasionally lift and carry fifty pounds; frequently lift and carry 25 pounds; stand and/or walk for six hours; unlimited pushing and/or pulling per the limits of lifting and carrying. Dr. Decker found that plaintiff had no motor sensory or reflex abnormalities, but he did note that plaintiff could only squat fifty percent. (Tr. 114.) Plaintiff had no postural limitations; he had a mild loss of manipulation in his right hand; and he had no visual or communicative limits. Plaintiff should avoid vibrations. (Tr. 115–16.)

Joseph DeLucia, D.O., a pain management specialist, saw plaintiff on September 20, 1995, and diagnosed chronic lumbar back pain with radiculopathy (Tr. 173–74). An MRI of plaintiff's lumbar spine, performed on September 23, 1995, revealed degenerative disc disease and spondylosis.

There were annular bulges, but no evidence of herniated nucleus pulposis. (Tr. 163.) On October 13, 1995, plaintiff underwent a lumbar steroid injection pursuant to Dr. DeLucia's recommendation (Tr. 182).

On November 3, 1995, Eric L. Anderson, M.D., completed a Residual Physical Functional Capacity Assessment for plaintiff (Tr. 104–11). Dr. Anderson found that plaintiff could occasionally lift and carry fifty pounds; frequently lift and carry 25 pounds; stand and/or walk for six hours in an eight-hour day; sit with normal breaks for six hours in an eight-hour day; push or pull with the same weight limitations for lifting and carrying; frequently climb, balance, kneel, crouch or crawl; problematic stooping; unlimited manipulation except with right hand due to missing tip of thumb; unlimited seeing, speaking, hearing; avoidance of machinery. Dr. Anderson noted that plaintiff's residual functional capacity was limited due to pain and his degenerative joint disorder. (Tr. 109.)

Dr. Chi–Hsi Lin, a neurologist, evaluated plaintiff on November 16, 1995. Dr. Lin found no evidence of focal neurological deficit. He noted that plaintiff did not have a herniated disc. Dr. Lin could not certify that plaintiff was permanently and totally disabled. (Tr. 209–210).

Plaintiff had another lumbar myelogram done on July 19, 1996. It revealed degenerative disc changes at L2–L3 and L4–S1 and focal disc bulging at the L2–L3 level. (Tr. 179.) A CT scan of the lumbar spine performed on the same day revealed no evidence of a herniated nucleus pulposis. (Tr. 180).

On August 23, 1996, M.L. Faulkner, D.O., one of plaintiff's treating physicians, completed a Medical Source Statement (MSS) for plaintiff. Dr. Faulkner stated that he found plaintiff's subjective opinion that he needed to rest for one hour after five to ten minutes of activity to be credible. Nevertheless, the doctor opined that plaintiff could frequently lift 25 pounds; stand and/or walk continuously for an hour, for a total of four hours in an eight-hour day; sit for one hour continuously, for a total of four hours in an eight-hour day; push or pull no more than 50 pounds; occasionally climb, balance, kneel, and bend; never stoop or crouch. Plaintiff was limited in his ability to reach, but he could handle, finger, feel, see, and hear without problems. He could not work around vibrations or machinery. Rest would be helpful to his condition. (Tr. 176–78.)

On November 18, 1996, plaintiff fell off his back porch. He sought treatment at the Ozarks Medical Center Emergency Department. Plaintiff walked in, and the attending physician noted that plaintiff was not in acute distress. A lumbar spine X-ray revealed moderate narrowing of the disc space at L4–L5 and mild to moderate narrowing at L2–L3, with anterior spurring. (Tr. 227.)

Plaintiff saw Dr. Faulkner on November 21, 1996. Dr. Faulkner expressed concern over plaintiff's depression, his tendency to overdose on pain medications, and his financial inability to pay for treatment. He completed a second MSS for plaintiff. This time Dr. Faulkner opined that plaintiff could frequently lift five pounds and occasionally lift ten pounds; stand and/or walk continuously for fifteen to twenty minutes, for a total of two hours in an eight-hour day; sit continuously for 45 minutes, for a total of two to three hours in an eight-hour day. In this report, Dr. Faulkner noted that plaintiff had limited ability to push and/or pull. He could occasionally balance, stoop and kneel, but he could never climb or crouch. Plaintiff could sometimes bend. His ability to reach was limited, but he had no limitations in his ability to handle, finger, feel, see, hear, or speak. He could not work around heights, machinery, or vibrations. Dr. Faulkner felt plaintiff needed vocational rehabilitation training. (Tr. 231–33.)

On December 23, 1996, plaintiff wrote a letter to the Social Security Administration to express his disagreement with the ALJ's decision of his appeal. Plaintiff asserted that he never fully recovered from his 1979 injury, and that his 1979 injury was what accounted for his poor work history. (Tr. 215–16.)

On January 13, 1997, Dr. Faulkner stated that plaintiff had bulging disc disease. He noted that plaintiff had abused his pain medications in the past, and that he suffered from depression. Plaintiff did not have financial support for treatment. Dr. Faulkner stated that plaintiff could be retrained and rehabilitated to do a non-labor job, especially if he were to receive a dorsal column stimulator to control pain. (Tr. 229–230.) On January 22, 1997, plaintiff went to the emergency department of Ozarks Medical Center, complaining of stress and drug abuse. He tested positive for antidepressants and opiates. (Tr. 217–224.)

At the administrative hearing on September 10, 1996, plaintiff testified that he had pain in his hips up to his mid-back. He used his TENS unit every day to control pain. The TENS unit made the pain bearable, but it did not alleviate the pain. Plaintiff stated that his average pain with the TENS unit or medication was a seven on a scale of one to ten, with ten being the most severe pain. Plaintiff testified that he could wash dishes in ten-minute intervals, but that he could not vacuum or take care of his lawn. He could not work on his car. He reads quite a bit, but tries to stay as inactive as possible. (Tr. 41–45.) He stated that his back pain prevented him from driving because he can't sit or stand long without support and his pain medication makes it difficult for him to concentrate (Tr. 39). Plaintiff testified that he could stand for fifteen to twenty minutes before having to change positions; he could walk twenty to thirty feet; he could sit continuously for five minutes; he could lift one to two pounds (Tr. 45–46). Plaintiff complained that his medication made him drowsy and he rests because of the pain medication. He also lies down to relieve pain off and on all day. (Tr. 44.) Plaintiff stated that his inability to do the type of work he has always done in the construction industry is frustrating. He doesn't believe he has any psychological problems that would limit his ability to work. Plaintiff testified that he had never received treatment for depression. (Tr. 47.)

Michael Wiseman, a vocational expert (VE), testified at the administrative hearing. He testified that plaintiff had acquired the transferable skills of public relations, estimating bids, and materials, reading and writing simple reports, and operating simple equipment and tools. (Tr. 54.) The ALJ posed a hypothetical with the following factors: an individual of plaintiff's age, education, experience, and skills, and with the ability to do sedentary work (Tr. 53). The VE stated that such an individual could perform the sedentary semiskilled jobs of telephone solicitor and maintenance dispatcher, or the sedentary unskilled jobs of clerical mailer and surveillance system monitor (Tr. 53, 54). If the individual could do light work, the VE opined that such an individual could do semiskilled work such as motel clerk, hardware salesman, production assembler, or video store sales attendant (Tr. 54–55). If the same individual could do sedentary and light level work with the limitations noted by Drs. Decker and Anderson, he could do the jobs noted in the original hypothetical (Tr. 55). The VE noted that even if the individual's range of motion were somewhat limited, as noted by Dr. Ball, he would not be precluded from doing sedentary work (Tr. 56). Mr. Wiseman testified that if an individual had to rest after short periods of activity for a half hour at a time, there would be no type of work available for that individual (Tr. 58).

### Standard of Review

The reviewing court must sustain the Commissioner's decision if the findings are supported by substantial evidence on

the record as a whole. 42 U.S.C. § 405(g); *Piercy v. Bowen*, 835 F.2d 190 (8th Cir. 1987). The court may not, however, "rubber stamp" the Commissioner's decision, but must examine both the evidence that supports and detracts from the administrative determination. *Piercy*, 835 F.2d at 191; *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir.1991).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989). It is more than a scintilla of evidence, *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir. 1983), but "something less than the weight of the evidence." *Cruse*, 867 F.2d at 1184. The possibility of drawing inconsistent conclusions from the evidence does not prevent the Commissioner's finding from being supported by substantial evidence. *Id. See also Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1) and/or § 1382c(a)(3). To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." *McMillian*, 697 F.2d at 220.

If the claimant establishes the impairment is sufficiently severe to prevent return to a former occupation, the burden shifts to the Commissioner to prove the claimant can perform other substantial gainful employment. *Buck v. Bowen*, 885 F.2d 451, 454 (8th Cir.1989). The Commissioner need not find a specific job opening for the claimant, but must prove that substantial gainful activity is realistically within the capabilities of the claimant. *McMillian*, 697 F.2d at 221.

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments. *McMillian*, 697 F.2d at 221.

### Analysis

In evaluating claims for disability benefits the ALJ must conduct a five-step sequential evaluation: (1) is the claimant engaged in substantial gainful activity; (2) does that claimant have severe impairments; (3) does the impairment or combination of impairments meet or equal an impairment listed in Appendix 1; (4) does the impairment or combination of impairments prevent the claimant from doing past relevant work; (5) does the impairment or combination of impairments prevent the claimant from doing other work which exists in significant numbers in the national economy. 20 C.F.R. § 404.1520.

The ALJ correctly found that plaintiff had not engaged in substantial gainful employment since that alleged onset date of February 2, 1994 (Tr. 16). The ALJ found that plaintiff suffered from a severe impairment. This is supported by substantial evidence on the record. At step three, the ALJ determined that plaintiff's impairment did not meet the listings in Appendix 1.

The ALJ found that none of the many physicians who treated plaintiff found that he was permanently disabled. Those physicians who treated him after his two back injuries in 1979 and 1991 found that he was disabled from work temporarily, and

that he could return to modified or light work. (Tr. 143, 151.) There was no evidence of neurological defect or disc herniation (Tr. 167, 206–207, 209–210, 143, 180). Most of plaintiff's physicians, including his treating physicians, recommended that he pursue physical therapy and vocational rehabilitation (Tr. 136, 151, 154–155, 229–230).

■ The ALJ must also consider plaintiff's subjective complaints of disabling pain when determining whether or not he is disabled. In *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984), the court identified factors to be used in assessing the credibility of a claimant's allegations of disabling conditions. Those factors include objective medical evidence, subjective descriptions of pain and incapacity, the claimant's daily activities, claimant's prior work record, and the effects of medication. If the ALJ finds inconsistencies between the claimant's subjective complaints and the objective evidence in the record, he may discount such complaints. *Polaski,* 739 F.2d at 1322; *Wilson v. Chater,* 76 F.3d 238, 241 (8th Cir.1996).

■ The ALJ applied the *Polaski* analysis to the facts in this case. The medical evidence does not support plaintiff's allegations that he has disabling pain due to his impairment. Medical evidence revealing only minor impairments is sufficient basis to discount the plaintiff's assertion of disabling pain. *Brown v. Chater,* 87 F.3d 963, 965 (8th Cir.1996) (citing *Matthews v. Bowen,* 879 F.2d 422, 425 (8th Cir.1989)).

Plaintiff described his daily activities as being very limited and alleged that he needed to rest for one third of the day to control his pain. It is significant that none of plaintiff's doctors, including his treating physicians, specifically prescribed lying down or reclining to relieve pain. To the contrary, the majority of them prescribed exercise, physical therapy, and a return to light or moderate work. *See Brown v. Chater,* 87 F.3d 963, 965 (8th Cir.1996)

(citing *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993) (lack of significant medical restrictions inconsistent with complainant's complaints of disabling pain)). If plaintiff was not lying down out of medical necessity, then that indicates that he was lying down by choice. *Brunston v. Shalala,* 945 F.Supp. 198, 202 (W.D.Mo. 1996); *Schroder v. Sullivan,* 796 F.Supp. 1265, 1270 (W.D.Mo.1992).

The ALJ opined that plaintiff's poor work record indicated that he might not be willing to work and that he, therefore, had a secondary motive to seek disability benefits. Plaintiff's work history is very spotty since 1979. He was on AFDC relief for seven years from 1980 through 1987. During the years 1974 through 1995, plaintiff earned no income for eleven years. His average income for the other eleven years was about $2,500 per year. (Tr. 83–84.) A work history characterized by fairly low earnings and significant breaks in employment casts doubt on a claimant's credibility. *Comstock v. Chater,* 91 F.3d 1143, 1147 (8th Cir.1996).

Plaintiff asserts that his injury in 1979 prevented him from returning to full-time work. However, when he was seeking worker's compensation for his 1991 injury, he adamantly maintained that he had fully recovered from the 1979 injury and that he had suffered no appreciable symptoms between 1988 and 1991. (Tr. 148, 215–16.) During the time plaintiff said he had no symptoms, i.e., 1988 through 1991, the record indicates that he worked for two months in 1989 and six months in 1991 (Tr. 84). Based on the evidence on the record, the ALJ was justified in concluding that plaintiff's poor earnings record reflected his unwillingness to work rather than his 1979 back injury.

The ALJ articulated the inconsistencies in the record upon which he relied when discrediting plaintiff's testimony regarding his subjective complaints of disabling pain. The substantial evidence on the record as a whole supports the ALJ's finding that

plaintiff's allegations of disabling pain are not credible.

 The ALJ determined that plaintiff's impairment did preclude him from performing his past relevant work (Tr. 21). The ALJ called upon a vocational expert to testify regarding the availability of work for an individual with the plaintiff's physical limitations. The ALJ found that plaintiff's treating physician, Dr. Faulkner, made credible findings regarding plaintiff's exertional limitations. (Tr. 21, 176–78.) Plaintiff notes that Dr. Faulkner made a second assessment of his exertional limitations that was much more limited than the one which the ALJ found to be credible (Tr. 231–33). The court notes that there was no medical evidence of a change in plaintiff's physical condition between Dr. Faulkner's first MSS of August 23, 1996, and his second MSS of November 21, 1996. However, Dr. Faulkner made a reference to plaintiff's inability to pay for treatment on the same date that he issued the much more restrictive residual functional capacity assessment. The court finds that the ALJ properly found Dr. Faulkner's first assessment of plaintiff's residual functional capacity to be credible.

Based on plaintiff's age, education, and work history, and taking into account his residual functional capacity as set forth by his treating physician, the VE determined that a number of light and sedentary semi-skilled and unskilled jobs were available to plaintiff in sufficient numbers in the local and national economy.

 Plaintiff asserts that the ALJ's hypothetical question to the VE amounted to reversible error because it failed to take into account plaintiff's asserted need to rest for one-third of the day. The hypothetical question need only take into account those impairments found credible by the ALJ and supported on the record. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir.1996). The evidence on the record does not support plaintiff's assertion that he must rest for one-third of the day, and the ALJ specifically discredited plaintiff's allegation to that effect.

The court notes that plaintiff is forty years old, has a twelfth-grade education, and has transferable work skills. Pursuant to section 416.969 of Regulation No. 16 and Rule 201.29, Table No. 1 of Appendix 2, subpart P, regulation No. 4, plaintiff is not disabled.

There is sufficient evidence on the record as a whole to support the decision of the ALJ that plaintiff is not disabled under the Social Security Act.

Based on the foregoing, it is hereby

ORDERED that the decision of the Commissioner is affirmed.