_____

No. 95-1279
_____

Ruth A. Baumgarten,                    *
                                       *
          Appellant,                   *    Appeal from the United States
                                       *    District Court for the
     v.                                *    District of North Dakota.
                                       *
Shirley S. Chater, Commissioner        *
of Social Security,*                   *
                                       *
          Appellee.                    *

_____

Submitted:  October 18, 1995

Filed:  January 30, 1996
_____

Before BOWMAN, FLOYD R. GIBSON, and WOLLMAN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.


     Ruth Baumgarten filed an application for Title II disability
insurance benefits on October 30, 1992, which was denied, both in
November 1992, and upon reconsideration in January 1993.
Subsequently, a hearing was held before an administrative law judge
(ALJ) who found that Baumgarten was not disabled within the meaning
of the Social Security Act.  The Appeals Council denied review and
the district court granted summary judgment affirming the denial of
benefits.  Because we find that the ALJ's decision discounting
Baumgarten's pain was based on an inaccurate reading of the record,
we reverse and remand for further proceedings.

_____

     *Effective March 31, 1995, the functions of the Secretary of
Health and Human Services in social security cases were transferred
to the Commissioner of Social Security.  P.L. No. 103-296.
Pursuant to Fed. R. App. P. 43(c), Shirley S. Chater, Commissioner
of Social Security, is substituted as the appellee in this action.

Ruth Baumgarten is a fifty-three-year-old woman who has an eighth-grade education and has completed her GED.  She has worked as a waitress, but her most recent employment, from 1980 until May 1991, was with Farmer's Union Oil.  She began working at Farmer's Union as a bookkeeper, but because of her lack of education she was moved into retail sales, with additional duties stocking shelves and pumping gas.  While moving a cart of oil cans in 1989, Baumgarten fell and injured her back.  She sought treatment for back pain, leg pain, and headaches resulting from her injury.  She continued working until May 1991 when, according to her testimony, she quit because she could no longer manage the heavy lifting involved in her job.

At the hearing before the ALJ, Baumgarten testified that on a good day her pain is at a level six or seven on a scale of one to ten, and on a bad day her pain is at a level nine.  She estimated that she has four to five good days per month.  Baumgarten's husband testified that Baumgarten's pain appeared to be severe and that her disposition had changed since her pain began.  According to Baumgarten's testimony, weekly chiropractic treatments afford partial, temporary relief, and in addition Baumgarten takes twelve to twenty-four Tylenol per day and soaks in a hot bath two or three times a week to relieve her pain.

The ALJ, following the five-step analysis set out in 20 C.F.R. §§ 404.1520 and 416.920, concluded that Baumgarten's impairments did not rise to the level of severity required to meet disability status under the Act, but that her pain did prevent her from returning to her past relevant work.  Moreover, the ALJ conceded that if Baumgarten's pain were as severe as she claimed, she could not perform any work.  After discounting her pain, however, the ALJ determined that Baumgarten is capable of light work and that there are significant numbers of jobs in the national economy that she

can perform, such as general office clerk, hotel desk clerk and cashier.

Baumgarten claims that the ALJ improperly discounted her subjective claims of pain and did not properly shift the burden to the Commissioner to prove that there are jobs that Baumgarten is capable of performing.

## II.

A social-security claimant bears the burden of proving disability. Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994). If, however, a claimant demonstrates that she is unable to return to her past work, the burden shifts to the Commissioner to show that work exists in the national economy that the claimant can perform. Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). We must affirm the district court's judgment if there exists substantial evidence on the record as a whole supporting the ALJ's determinations. Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might find adequate to support a conclusion." Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). After reviewing the Commissioner's decision under this standard, we must remand for a re-evaluation of the record and further proceedings consistent therewith.

First, we consider Baumgarten's argument that the ALJ improperly discredited her subjective complaints of pain. Using the guidelines set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), the ALJ determined that Baumgarten's pain was less severe than she claimed. Polaski requires the ALJ to consider: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Hall v. Chater, 62 F.3d 220, 223

(8th Cir. 1995).

Applying these factors, the ALJ pointed to inconsistencies in the record that detract from the credibility of Baumgarten's complaints of pain. After a careful examination of the record, we find the ALJ's rationale to be partially flawed. Several of the alleged inconsistencies relied on by the ALJ are not supported by the record. These discrepancies undermine the ALJ's ultimate conclusion that Baumgarten's pain is less severe than she claims.

First, the ALJ asserted that Baumgarten's alleged swelling of her fingers was not supported by medical evidence and was never presented to any examining physician. The record is to the contrary. In reports dated April 24, 1991 and February 12, 1992, Dr. Martire, one of Baumgarten's physicians, noted the problem of her swollen fingers.

The ALJ next stated that upon examination by Dr. Martire, Baumgarten reported no difficulty staying asleep, although at other points in the record she claims disturbed sleep. In contrast, we find the record to show that Baumgarten consistently complained to Dr. Martire as well as to other medical personnel that she had difficulty sleeping. For example, on January 28, 1992, Dr. Martire noted that Baumgarten "can't sleep" and on February 25, 1992, that she had trouble falling asleep because of the pain and that she awoke because of the pain. In addition, a physical therapist noted that Baumgarten "reports maximum 5-6 hours of sleep per night." Dr. Martire prescribed Elavil, not only to relieve pain but for its "sleep effect." Although the fact that Baumgarten ceased taking Elavil, a medication prescribed in part to help her sleep, may provide some evidence that Baumgarten's difficulty sleeping had either lessened or was not as severe as she claimed, the record does not support the ALJ's conclusion that Baumgarten's testimony concerning difficulty sleeping is inconsistent with her past medical complaints.

-4-

The ALJ discredited Baumgarten's testimony that she suffered from "constant" headaches by stating that she never sought treatment specifically for headaches and that a progress note of June 1992 shows no headache complaints, and one dated October 1992 specifically notes that she denied headaches. The record belies the statement that Baumgarten never sought treatment for headaches. Dr. Martire noted headaches as one of Baumgarten's complaints throughout his records. Moreover, although the statements denying headaches are in the record, we note that the doctor's reports referred to are those of her oncologist, who was examining Baumgarten to determine whether her breast cancer had recurred. Baumgarten's claim that she recognized that the oncologist was not the proper physician to treat headaches that she knew to be related to her back injury is plausible. The ALJ's misstatements and his failure to distinguish between complaints made to an oncologist and those made to the physicians specifically treating Baumgarten's back injury undermine his conclusion that Baumgarten's complaints were not credible.

For further support of his decision to discount Baumgarten's pain, the ALJ pointed to the fact that Baumgarten had discontinued use of her prescribed pain medications, Elavil and Orudis. We have held that a claimant's failure to take substantial pain medication is "inconsistent with subjective complaints of disabling pain." Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994). The ALJ's analysis, however, does not stop at this point. Rather, he goes on to make the inaccurate assertion that "there is no reasonable explanation as to why she quit taking prescribed medication." To the contrary, Baumgarten did explain that she ceased taking prescription drugs because they afforded no more pain relief than Tylenol. Again, the ALJ's erroneous assertion casts doubt on his ultimate conclusion.

In discrediting Baumgarten's pain, the ALJ also pointed to her daily activities: making her bed, preparing food, performing light

-5-

housecleaning, grocery shopping, knitting, crocheting, and visiting friends.  The ALJ asserts that these activities "demonstrate an ability to meet the physical demands of work which does not involve prolonged sitting or standing."  We have repeatedly held, however, that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."  Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995) (citing Harris v. Secretary, 959 F.2d 723, 726 (8th Cir. 1992) and Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989)).  To establish disability, Baumgarten need not prove that her pain precludes all productive activity and confines her to life in front of the television.  See Thomas v. Sullivan, 876 F. 2d 666, 669 (8th Cir. 1989).

In addition to Baumgarten's regular daily activities, the ALJ referred to several specific activities that appear inconsistent with her described limitations and pain.  Specifically, the ALJ mentioned that in July 1991 Baumgarten pulled weeds for two hours; in September 1991 she painted a ceiling; in November 1991 she shoveled snow; in June 1992 she mowed her lawn; and in September 1992 she again pulled weeds.  Because several months separated each attempt at these strenuous activities, and after each activity Baumgarten went to the doctor complaining of pain, these isolated attempts shed more light on Baumgarten's perseverance than on the credibility of her complaints of pain.

The ALJ's findings are not without some support in the record. When seen by Dr. Martire in February 1992, Baumgarten described her back pain as "moderate," and she acknowledged that she could have continued working as a sales person and pumping gas had it not been for the fact that she was required to lift fifty pounds. Assuming that as of February 1992 Baumgarten could have continued working at a job that did not require heavy lifting, then it is likely that she could have engaged in that work at the time of her application

for benefits, given the lack of evidence that her pain worsened after she stopped working. Several reports, in fact, indicate that her condition improved somewhat after that time. For example, on July 23, 1992, the doctor noted her condition as "pretty good." On October 8, 1992, she is reportedly "better." When viewed in the light of several inconsistencies in the ALJ's reading of the record, however, this evidence is insufficient to support the ALJ's decision to discount Baumgarten's subjective complaints of pain. Because the ALJ concedes that if Baumgarten's pain is as severe as she claims, she is incapable of working, we must remand for reconsideration of Baumgarten's credibility in light of the above-noted clarifications of the record.

## III.

Because the Commissioner concedes that Baumgarten cannot return to her past work, she bears the burden of showing that there are other jobs Baumgarten can perform. Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). The vocational expert who testified at the hearing was asked to determine the job possibilities of an individual with Baumgarten's vocational profile. Because the hypothetical question posed to the vocational expert was inextricably intertwined with the ALJ's credibility findings, perforce there must be posed to a vocational expert hypothetical questions based on findings entered after a consideration of the evidence that the ALJ failed to take into account. See Teague v. Railroad Retirement Bd., 982 F.2d 303, 304 (8th Cir. 1992).

The judgment is reversed, and the case is remanded to the Commissioner for a new hearing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-