# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

―――――――――

No. 97-3750

―――――――――

Gwen Burress,                    *
                                 *
        Plaintiff-Appellant,     *
                                 *
    v.                           *        Appeal    from    the    United
                                          States
                                 *        District    Court    for    the
                                          Eastern
Kenneth S. Apfel, Commissioner of  *      District of Arkansas
Social Security,                 *
                                 *
        Defendant-Appellee.      *

―――――――――

Submitted: March 10, 1998

Filed: April 14, 1998

―――――――――

Before MCMILLIAN and FAGG, Circuit Judges, and BENNETT,[*] District Judge.

―――――――――

BENNETT, District Judge.

In this Social Security disability case, claimant Gwen Burress appeals from a

―――――――――

[*] The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation.

1

district court judgment affirming the Social Security Commissioner's decision to limit Burress's disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Burress argues that the Commissioner's decision to limit her social security disability benefits to a closed period from February 14, 1991, through July 17, 1992, should be reversed because it is not supported by substantial evidence in the record as a whole. We agree with Burress, and reverse and remand for determination of benefits.

## I.

### *Background*

Burress was born in 1942, and has an eleventh grade education. She has previously performed jobs as a jewelry salesperson and as a helper at her husband's filling station. In February 1991, Burress worked with her husband as part of an over- the-road truck driving team. The event precipitating her disability claims occurred on February 15, 1991, when she tripped and fell at a truck stop, fracturing her jaw. Both en route to the hospital and upon arrival, Burress experienced several episodes of "syncope" or—in lay person's parlance—loss of consciousness. A cardiac evaluation, including tilt-table testing, revealed that Burress suffered from a condition known as neurally mediated syncope. Apparently Burress had suffered from some degree of this condition for quite some time with episodes of syncope dating back to when she was an adolescent.[1] As a result of this diagnosis, she was advised to undergo pacemaker implantation, which she did on February 21, 1991. Burress filed applications for disability and disability insurance benefits on June 19, 1992, claiming disability

---

[1] The record also reveals that Burress suffers from a blood disorder known as thrombocytophenia—a condition resulting in an abnormally small number of platelets in the circulating blood.

2

beginning on February 15, 1991, arising from her heart problems. Burress's applications for benefits were denied initially, as well as upon reconsideration. She then sought and received an administrative hearing.[2]

On August 23, 1993, the first administrative law judge to consider the matter issued a decision finding Burress entitled to a closed period of disability from February 15, 1991 to July 17, 1992. The ALJ determined that as of July 17, 1992, Burress "attained a medical improvement related to her ability to work." (Joint App. at 320-21). On February 28, 1994, the Social Security Appeals Council remanded the case for further review and development of the record. Specifically, the Appeals Council vacated the first ALJ's findings regarding Burress's disability status as of July 17, 1992, and remanded the case for resolution of that issue.[3]

---

[2]At all times relevant, Burress was represented by counsel.

[3]The Appeals Council framed the issue to be resolved on remand as follows:

> The hearing decision indicated that as of July 17, 1992 the record supported a determination that the claimant had the residual functional capacity for light work activities (Finding 5). Therefore, a conclusion was reached that her medical condition had improved and this improvement was related to her ability to perform work-related activities (Findings 5 and 6). With the ability to perform light work activities, the claimant's past work was assessed and determinations were made that the claimant could return to her past job as a jewelry salesperson and that she was no longer disabled (Findings 9 and 10). However, a physical medical source statement has been submitted in connection with the request for review that relates that the claimant may not be able to perform light exertional work activities. Limited information accompanied the statement. Therefore, the Appeals Council is of the opinion that the claimant's ability to perform work-related activities needs to be evaluated further.

(Joint App. at 335-36).

(continued...)

A supplemental hearing was held before a different administrative law judge (the second ALJ).  On February 23, 1995, the second ALJ issued a decision in which he too concluded that Burress was not "disabled" within the meaning of the Social Security Act as of July 17, 1992.  Following the sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920, the second ALJ found that Burress had not engaged in substantial gainful activity since July 17, 1992.  The ALJ found that although Burress suffers from severe impairments of a heart disorder and a blood disorder, she did not have an impairment or a combination of impairments severe enough to meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  The second ALJ, like the first, found that Burress experienced a medical improvement in her heart and her syncope episodes due to the implantation of the pacemaker.  The ALJ found that although Burress is unable to perform her past relevant work, she has the residual functional capacity to perform other work existing in significant numbers in the national economy.  The Appeals Council denied Burress's request for further review, making the second ALJ's decision the final decision of the Commissioner.

Burress subsequently sought judicial review in federal district court. Ultimately, Burress and the Commissioner filed cross-motions for summary judgment, and on September 12, 1997, the district court affirmed the Commissioner's decision by granting his motion for summary judgment and denying Burress's motion.  In a two-page order, the district court set forth the applicable standard of review, and made the following finding:

(...continued)

4

> The Court has reviewed the parties' briefs, the decision of the ALJ, the transcript of the hearing and the additional medical evidence. As a result of that review, the Court agrees with the arguments in the Commissioner's brief and finds that the record as a whole reflects substantial evidence to support her [sic] decision.

(Joint App. at 471-72). This timely appeal followed.

## II.

### *Standard of Review*

It is well-settled that in reviewing the ALJ's decision, we, like the district court before us, must affirm if the decision is supported by substantial evidence based on the record as a whole. *See, e.g.*, *Titus v. Callahan*, 133 F.3d 561, 562 (8th Cir. 1997); *Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Baumgarten v. Chater*, 75 F.3d 366 (8th Cir. 1996); *Metz v. Shalala*, 49 F.3d 374, 376 (8th Cir. 1995). As this court has repeatedly stated, the "substantial evidence in the record as a whole" standard is not synonymous with the less rigorous "substantial evidence" standard:

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary.

*Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989) quoting *Jackson v. Bowen*, 873 F.2d 1111, 1113 (8th Cir. 1989) in turn quoting *Gavin v. Heckler*, 811 F.2d 1195, 1199

5

(8th Cir. 1987).

This court has previously observed that "[i]t is not sufficient for the district court to simply say there exists substantial evidence supporting the [Commissioner] and therefore the [Commissioner] must be sustained." *Gavin*, 811 F.2d at 1199. Instead:

> [T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. *See Steadman v. Securities and Exchange Commission*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981). It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for *the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.*

*Id.* at 1199 (emphasis added).

In this case, the district court affirmed the Commissioner's denial of disability benefits as of July 17, 1992 on the ground that "substantial evidence in the record as a whole" supported the decision. However, the district court failed to produce any of the relied upon substantial evidence from the record as a whole in its order. Such an analysis lacks the "searching inquiry" required by the applicable standards. *See id; see also Universal Camara Corp. v. National Labor Relations Bd.*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951) (observing that in the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.")

6

*Analysis*

On appeal, Burress advances three arguments in support of her challenge to the denial of benefits after July 17, 1992. First, Burress contends that there is not substantial evidence in the record as a whole to support the district court's affirmance of the second ALJ's decision that she experienced a medical improvement which allowed her to perform substantial gainful activity as of July 17, 1992. Second, Burress maintains that the district court erred in affirming the second ALJ's decision because the ALJ failed to fully and fairly develop the administrative record. Finally, Burress argues that the district court should have reversed the ALJ's decision because it was premised on faulty hypothetical questions posed to the vocational expert (VE).

We turn first to Burress's contention that there is not substantial evidence in the record as a whole to support the ALJ's decision that she experienced a medical improvement which allowed her to perform substantial gainful activity as of July 17, 1992. Burress argues that in reaching this conclusion, the ALJ disregarded "undisputed medical evidence" that she continues to suffer symptoms from neurally mediated syncope "which severely limit her physical abilities." (Pl.'s Br. at 24).

A medical improvement is defined in the regulations as a decrease in the medical impairments present at the time of the most recent favorable medical condition. 20 C.F.R. § 404.1594(b)(1). The ALJ made the following findings in support of his conclusion that Burress experienced a medical improvement sufficient to warrant the denial of further disability benefits:

> The undersigned finds the claimant experienced a
> medical improvement in her heart and syncope episodes
> due to implantation of a pacemaker which allows her
> to sit for significant periods of time without
> difficulty and to lift a

7

> minimum of 10 pounds. Thus, her medical improvement is related to her ability to perform substantial gainful activity.

(Joint App. at 34). Curiously, the ALJ does not specifically identify or otherwise explain the significance of the July 17, 1992 date to Burress's supposed medical improvement.[4] Instead, the ALJ simply asserts that based upon the objective medical evidence, Burress experienced a medical improvement as of that date.[5]

As an initial matter, we observe that the first ALJ's conclusion that Burress was entitled to a closed period of disability resulting from her heart condition stands as the Commissioner's final decision. It is significant to note that here we are not reviewing whether Burress was or was not entitled to disability benefits during the so-called closed period—the Commissioner has conceded that she was. Instead, we review the ALJ's decision to determine whether his conclusion that Burress was no longer disabled as of July 17, 1992, due to a medical improvement, is supported by substantial evidence in the record as a whole. We conclude that it is not.

The ALJ referenced three sources of objective medical evidence relating to Burress's condition. The first source is a Medical Source Statement-Physical (MSS) obtained from the Iowa Heart Center on August 17, 1993. In the MSS, Dr. Johnson,

---

[4]We note that the first ALJ originally fixed this date as the date upon which Burress was no longer disabled within the meaning of the Social Security Act.

[5]Burress, of course, takes issue with this date and suggests that the only plausible explanation is that the ALJ relied "entirely upon the examination of Ms. Burress by Michael Ball, D.O., which was performed on that date." (Pl.'s Brief at 24). Though we are inclined to agree with Burress's assessment on this issue, we note that the ALJ did not explicitly reference Dr. Ball's report in his decision.

who had replaced Dr. Van Whye[6] as one of Burress's treating physicians, opined that Burress's condition limited her basic strength factors in the following respects: she is able to frequently lift or carry 25 pounds of weight and occasionally able to lift or carry 10 pounds; she is limited in her ability to stand or walk to a period of one-half hour continuously for a daily total of two hours; she is able to sit for one-half hour continuously for a total of three to five hours per day; and she is limited in her ability to push and pull.[7] The MSS also reflects that although Burress could occasionally stoop, kneel, crouch, and bend, she was unable to climb or balance. In describing Burress's limitations, Dr. Johnson stated that Burress's neurally-mediated syncope/presyncope condition is "probably the worst" he had ever seen and that she was limited in her activities due to the fact that her symptoms could not be reliably or completely controlled. (Joint App. at 326-27).

The second medical source cited by the ALJ is a report prepared on April 5, 1994, following a consultative examination by Thomas E. Cochran, M.D.[8] Dr. Cochran also completed a MSS on Burress's condition in which he made the following findings: Burress is limited in her ability to frequently lift or carry a maximum of 25 pounds and she is limited in her ability to sit to a period of two to four hours continuously for a daily total of four hours. Dr. Cochran's MSS also reflects that Burress may occasionally engage in balancing activities, but noted that "prolonged

---

[6]Dr. Van Whye relocated his practice to Wisconsin during the pendency of Burress's disability proceedings.

[7]There is no explanation in the record for Dr. Johnson's somewhat puzzling opinion that Burress could frequently lift and carry weights of 25 pounds, but that she was only occasionally able to lift and carry weights of 10 pounds.

[8]Dr. Cochran examined Burress at the request of Disability Determinations.

standing can produce syncope." (Joint App. at 342-43). In his accompanying report, Dr. Cochran noted that although Burress had not experienced an episode of "frank syncope" since the pacemaker implantation, she did inform him that prolonged standing for more than five to ten minutes caused her to feel weak and light-headed. The third and final source of medical evidence referenced in the ALJ's report is a letter prepared by Dr. Johnson and dated August 29, 1994. Dr. Johnson indicated that he had performed a tilt-table test on Burress, and that the test revealed "the presence of very symptomatic and relatively severe neurally-mediated syncope, ameliorated by the pacing, yet not prevented in its entirety." (Joint App. at 352-53). Dr. Johnson further observed that Burress was unable to tolerate Lopressor medication for her syncope condition and that it was unlikely, given the severity of her condition, that she would ever be completely cured with medication.

The above-described medical evidence provides little, if any, support for the ALJ's determination that Burress experienced a medical improvement as of July 17, 1992. In the first place, all of these reports are dated *subsequent* to the July 17, 1992 date. Even if the reports were entirely favorable to the Commissioner—which they are not—they would only establish Burress's condition as of the date she was examined. This circumstance seriously undermines the ALJ's conclusion of medical improvement as of July 17, 1992.[9] Aside from the timing problem, the objective medical evidence in the record fails to reveal any discrete improvement in Burress's condition. Burress

---

[9] We have also reviewed the only medical report corresponding to the supposed date of medical improvement—the report of consultative examiner Dr. Ball. Dr. Ball observed that Burress did not suffer from uncontrolled episodes of syncope and had not experienced a syncope episode subsequent to pacemaker implantation. As indicated previously, we have no assurance that the ALJ relied on this medical evidence in reaching his decision.

10

concedes that she has not experienced a full-blown syncope episode since her pacemaker was installed. The medical evidence in the record is in accord. However, Burress did not experience full-blown syncope episodes during the period the Commissioner conceded she was disabled. Given this fact, we are perplexed by the Commissioner's seeming reliance on the absence of syncope episodes in support of his position that Burress experienced medical improvement in July of 1992. Our review of the medical evidence relied upon by the ALJ reveals that Burress's treating physician continued to describe her as "very symptomatic" despite the assistance of the pacemaker. While a treating physician's opinion is not conclusive in determining a claimant's disability status, it is generally entitled to substantial weight. *Grebenick v. Chater*, 121 F.3d 1193, 1199 (8th Cir. 1997); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996). Of course, the opinion must be supported by "medically acceptable clinical or diagnostic evidence." *Id.* The record provides ample evidence that tilt-table testing was performed on Burress at the time of her initial diagnosis in February 1991 and thereafter to ascertain her propensity for syncope episodes. In sum, the objective medical evidence does not constitute substantial evidence in the record as a whole that Burress was no longer disabled as of July 17, 1992.

In addition to the medical evidence, the ALJ also considered, and largely discredited, Burress's testimony regarding her subjective limitations. Applying the considerations set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), *cert. granted* and *judgment vacated on other grounds* by *Bowen v. Polaski*, 476 U.S. 1167, 106 S. Ct. 2885, 90 L. Ed.2d 974 (1988), the ALJ determined that Burress's limitations were less severe than she claimed.[10] Although an ALJ may reject a

---

[10]*Polaski* requires the ALJ to consider: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Baumgarten v. Chater,* 75 F.3d 366, 368 (8th Cir. 1996) citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995).

claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing the reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors." *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

At the administrative hearing, Burress testified that she continues to suffer from fatigue, light-headedness, weakness, and the fear that she will experience another syncope episode. She further testified that she attempts to avoid situations that cause pain, stress, and fatigue because her doctors have informed her that these things may exacerbate her syncope condition.

In discounting Burress's subjective complaints, the ALJ pointed to her daily activities: washing dishes, cooking, dusting, sweeping, making beds, vacuuming one room at a time, and laundry. The ALJ found that these activities as well as Burress's ability to drive a vehicle moderate distances, care for her pets, visit with others, and to read and watch television were inconsistent with Burress's testimony regarding fatigue, weakness, dizziness, and stress. Although the record clearly supports a conclusion that Burress is able to engage in modest daily activity, our review of the hearing transcript reflects that Burress claims she is only able to perform most of these activities only occasionally, and that she is easily fatigued. Burress's testimony regarding her subjective limitations is not inconsistent with the objective medical evidence in the record as a whole. Both Dr. Johnson and Dr. Cochran indicated that Burress complained of weakness and light-headedness. Moreover, this court has repeatedly

observed that "'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" *Baumgarten*, 75 F.3d at 369 (quoting *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995) in turn citing *Harris v. Secretary*, 959 F.2d 723, 726 (8th Cir. 1992) and *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

The ALJ identified two other specific inconsistencies in Burress's testimony regarding her subjective limitations. The ALJ observed that although Burress complained that stress impaired her ability to concentrate, the medical evidence reflected that she had never complained to her consultative examiners about these symptoms. Apparently of more significance to the ALJ was Burress's testimony that she was able to walk up to one mile on a treadmill. The ALJ found this testimony to be a direct contradiction to Burress's assertion that she was only able to stand for a maximum of ten to fifteen minutes. (Joint App. at 33). Our review of the record leads us to the conclusion that to the extent these observations constitute inconsistencies, they do not rise to the level of substantial evidence on the record as a whole sufficient to support the ALJ's decision to discount Burress's testimony.

We are mindful that the Commissioner's decision to award disability benefits from February 15, 1991 to July 17, 1992, is not subject to our review today. Here, we review the record to determine whether substantial evidence in the record as a whole supports the Commissioner's decision that Burress was no longer disabled as of July 17, 1992. Upon careful review, we have not found the requisite substantial evidence in the record as a whole to support the Commissioner's decision that Burress experienced a medical improvement as of July 17, 1992.[11]

---

[11]Because we agree with Burress that there is not substantial evidence in the record as a whole supporting the Commissioner's decision, we need not address her alternative complaints regarding the development of the record and the hypotheticals submitted to the vocational expert.

13

We therefore reverse the district court's decision, and remand the cause to the Commissioner for the determination and award of benefits.

A true copy.

Attest: