Rallis v. SSA                    CV-01-303-JD  03/29/02
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Ekaterini F. Rallis

      v.                              Civil No. 01-303-JD
                                      Opinion No. 2002 DNH 074
Jo Anne B. Barnhart,
Commissioner, Social
Security Administration


                         O R D E R


     The plaintiff, Ekaterini Rallis, brings this action pursuant

to 42 U.S.C.A. § 405(g), seeking judicial review of the decision

by the Commissioner of the Social Security Administration,

denying her application for social security benefits under Title

II of the Social Security Act.  Rallis contends that the

Administrative Law Judge ("ALJ") failed to properly assess her

subjective complaints of pain so that the determination that she

is not disabled is not supported by substantial evidence.  The

Commissioner moves to affirm the decision.


                         Background

     Ekaterini Rallis claims disability due to injuries she

sustained in an automobile accident on July 31, 1993.  In

particular, she claims a back injury that has limited her

functional capacity.  Rallis's eligible status expired on

December 31, 1998.

Rallis is a native of Greece and came to the United States in 1980. She speaks and reads very little English, although she had a tenth grade education in Greece. She previously worked in a shoe factory cementing soles onto shoes. She was forty-three years old in December of 1998.

Following the accident on July 31, 1993, Rallis was taken to Wentworth Douglass hospital where an x-ray showed a slight narrowing of the C5-6 disc space in her neck. She saw Dr. Lampesis for back pain on August 2, 1993. On examination, he found Rallis's range of motion was limited and diagnosed cervical and lumbar sprains. An x-ray on August 18, 1993, showed a mild lumbar scoliosis convexed to the right and a transitional left L5 transverse process.

Rallis saw Dr. Mitchell Keltey for a consultation on August 24, 1993. Dr. Keltey noted a full range of motion in the cervical spine but severely limited forward flexion and pain with lateral bend. He noted that neurologically her arms were within normal limits and that the deep tendon reflexes in her legs were also normal. The x-rays showed mild right dextroscoliosis, spur formation at multiple levels of her spine, significant plate collapse, and some decrease in bone mass. Dr. Keltey diagnosed cervical and lumbar muscle inflammation and degenerative disease on those regions. He prescribed very active physical therapy and

2

a ten day course of a pain medication.

From January 25, 1994, to September 26, 1996, Rallis treated with Dr. Harilaos Sakellarides on a monthly basis.  Her symptoms were reported to be pain and stiffness in her lumbosacral and cervical spine with radiation to her legs, arms, and thighs.  Dr. Sakellarides prescribed a variety of pain medications during the period and advised Rallis to wear a corset.  He also advised her to avoid strenuous activities such as lifting, bending, pushing, and pulling.

A cervical spine x-ray done on February 11, 1994, showed minimal degenerative changes at C5-6.  An MRI of her lumbosacral spine on February 1, 1994, showed disc narrowing and mild spinal stenosis at L1-2, a posterior bulge into the vertebral canal and a mild bulging at L4-5.  An electromyography/nerve conduction study done on April 20, 1994, showed lumbar radiculopathy at L4 bilaterally, root irritation on the left at L5 and cervical radiculopathy with nerve root irritation at C6.  A second MRI of her lumbosacral spine in September of 1994 showed a moderate to marked posterior bulge at L1-2 and slight bulge at L4-5.

Rallis met with Dr. Mats Agren on January 20, 1997, for a second surgical opinion.  Dr. Agren found Rallis had an eighty percent range of motion in her neck, thirty percent flexion in her lower back, and seventy percent extension, bend, and

rotation.  Dr. Agren also noted other neurological signs.  He diagnosed neck and lower back pain with lumbar radiculitis.  He encouraged Rallis to walk and do conditioning, to moderate her medication, and to have injections.

Dr. Agren noted that an injection of Lidocaine at L5 gave Rallis two weeks of good pain relief which allowed her to be quite active.  On May 8, 1997, Rallis told Dr. Agren that she was sleeping better but that overall her pain was unchanged.  Her pain medication was beneficial allowing her to walk on her toes and heels and to do deep knee bends.  By June, Rallis reported that her pain was back to the pre-injection level and that she continued to use pain medication which provided good relief.

A CT scan of her lumbosacral spine in August of 1997 showed a herniated central portion of the disc at L4-5 with fragments having migrated down the spine and subtle under-filling of the L5 nerve root.  A myelogram done the same day also showed subtle decreased filling of the left L5 nerve root.  Dr. Agren stated in October of 1997 that Rallis had significant back pain with some referral down her leg and that her pain had not changed since 1993.

Rallis had a consultation with neurosurgeon Dr. Clinton F. Miller on December 19, 1997.  Dr. Miller noted that Rallis had full motion in her neck.  He observed moderate pain in the left

4

sciatic and lumbosacral spine junction with palpation.  She was able to stand and walk on her heels and tiptoes without difficulty, and her gait was normal although cautious and protective to avoid pain.  She had fifty percent forward flexion and fairly full extension and lateral bending at the waist.  Her reverse straight leg raising was normal but her forward straight leg raising was positive at forty-five degrees bilaterally.  Dr. Miller diagnosed chronic left L5 radiculopathy, left L5 lateral recess stenosis, chronic L1-2 diffuse central and right-sided disc protrusion, chronic cervical musculoskeletal strain injury with degenerative disc disease at C5-6, C6-7, C7-T1, and reactive spondylosis.

Rallis saw Dr. Miller next in February of 1999.  He noted that her walk had improved and that straight leg raising was normal.  Her range of motion on forward flexion was fifty percent, forty percent on extension, and full lateral bending. He diagnosed chronic left lumbosacral radiculopathy with L5 distribution.

On July 24, 1999, Dr. Saro Palmeri, a Disability Determination Services non-examining consultant, completed a physical residual capacity assessment on the plaintiff finding that she could frequently lift ten pounds, occasionally lift twenty pounds and had an unlimited ability to push and pull.  She

5

could sit, stand, and walk for at least six hours out of an eight hour day. She could only occasionally climb, stoop, and crawl, and was to avoid exposure to extreme cold.

Rallis's third MRI of the lumbar spine on August 10, 1999, showed a right posterior disc protrusion at L1-2, causing some deformity at the thecal sac, a minimal posterior disc bulge at L2-3, and some loss of signal at L1-2, L3-4, and L4-5, with degenerative changes. Dr. Miller noted that the previous disc bulge at L4-5 was no longer present and that Rallis's complaints of radiculopathy did not correlate with her disc abnormality at L1-2. He recommended physiatry and an aggressive course of physical therapy.

A vocational evaluation, focusing on Rallis's academic abilities, was done in October of 1999 by David Camlin. The tests were given in English, and due to Rallis's language difficulty, her attorney translated for her. Her achievement test scores were very low, and her Career Ability Placement Survey scores were also low. Camlin concluded that Rallis was not competitively employable.

A second physical residual capacity assessment was completed by a non-examining consultant on December 21, 1999. The consultant found the same abilities and limitations as the assessment done in July of 1999. Dr. Frank Graf completed a

6

medical report for the Social Security Administration in September of 2000. Dr. Graf diagnosed L1-2 intervertebral disc herniation, L4-5 intervertebral disc herniation with left lateralization, chronic cervical pain with bilateral arm numbness and tingling and radiculopathy into the left leg. He concluded that Rallis could lift ten pounds, sit for two to four hours in an eight hour day and for one hour without interruption, and stand and/or walk for one hour in an eight hour day, and for ten to fifteen minutes without interruption. She could not stoop, crouch, kneel, or crawl.

A hearing was held on October 30, 2000. Rallis was represented by counsel and testified at the hearing. Rallis's husband and two vocational experts, David Camlin and James Parker, also testified.

Rallis testified that she had trouble sleeping because of pain, and Rallis and her husband described her daily activities as being limited by her pain. Rallis testified that she could lift a gallon of water and could sit or stand for less than one hour at a time. Mr. Rallis testified that his wife was not able to ride in the car for very long and could do very little cooking or housework. Rallis said that she took Ibuprofen for pain.

Parker testified that a person of Rallis's age, education, past relevant work, and capacity for sedentary work could work as

7

a preparer. When Rallis's counsel added a requirement that she be permitted frequent breaks of ten or fifteen minutes every hour, Parker said that would preclude all work. The ALJ posed a hypothetical assuming Rallis's age, education, past work, and a residual functional capacity for light and sedentary work with a sit/stand option and restrictions on climbing, balancing, stopping kneeling, crouching, crawling, and exposure to extreme cold, heights, or machinery. Park testified that such a person could work as a hand packer, photograph finisher, and a preparer. Adding restrictions that she could only sit or stand for under an hour, lift under ten pounds, requires fifteen minute breaks every hour, and may have to lie in bed for up to two weeks at a time could preclude all work. The ALJ's last hypothetical included limitations of occasionally lifting up to ten pounds, standing or walking for one hour during the day, and for ten to fifteen minutes without interruption, sitting for two to four hours per day and for one hour without interruption, and with the other postural limitations. Parker testified that those limitations would preclude all work. Camlin testified about the results of the tests he gave Rallis.

The ALJ found that Rallis's back condition constituted a severe impairment, but that it did not meet or equal the criteria of the listed impairments. He determined that she had a residual

8

functional capacity to lift and carry up to twenty pounds occasionally and up to ten pounds frequently. She needed the freedom to alternate sitting and standing at will. She should avoid working at heights or around machinery; tasks requiring stooping, crawling, or more than occasional climbing or balancing, kneeling, or crouching; and exposure to extreme cold. The ALJ found that Rallis could not return to her former work but that work existed in the relevant economies that she could do, based on the vocational expert's testimony.

The ALJ determined that Rallis was not disabled. The Appeals Council denied review in June of 2001. Denial of review made the ALJ's decision the decision of the Commissioner.


## Standard of Review

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. 42 U.S.C.A. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quotation omitted).  In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence."  <u>Irlanda Ortiz v. Secretary of Health and Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991).

Discussion

Rallis's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[1] At step five, the Commissioner has the burden to show that despite the applicant's severe impairment, she retained the residual functional capacity to do work other than her prior work and that work the claimant can do exists in significant numbers in the relevant economies.  <u>See</u> <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5

---

[1]The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or equals a listed impairment;
> (4) whether the impairment prevents the claimant from performing past relevant work; and
> (5) whether the impairment prevents the claimant from doing any other work.

<u>See</u> 20 C.F.R. § 404.1520.

(1st Cir. 2001); Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). Rallis contends that the ALJ did not properly evaluate her subjective complaints of pain, and, as a result, did not credit her description of the severity of her pain and its disabling effects on her activities.[2]

An ALJ is required to consider a claimant's complaints of pain in making a disability determination. See 20 C.F.R. § 404.1529(a). The ALJ must first determine whether the claimant has a "medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, such as pain." § 404.1529(b). If such an impairment is found, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms, considering the claimant's objective medical evidence along other evidence, to determine whether the symptoms limit the claimant's capacity for work. See § 404.1529(c).

The Commissioner recognizes that symptoms such as pain may show impairments of greater severity than is demonstrated by the objective medical evidence. See § 404.1529(c)(3); see also Avery

---

[2]Rallis asserts in a footnote that the ALJ erred, as a matter of law, in determining that her impairments did not meet or equal a listed impairment because he did not provide an explanation about which listed impairments he considered and why Rallis's impairment did not meet or equal those. Since that argument is not developed as a basis for reversing the decision of the Commissioner, it is not considered here.

11

v. Sec'y of Health & Human Servs., 797 F.2d 19, 29-30 (1st Cir. 1986). A claimant's "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Sec'y of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). The ALJ must consider the following factors, sometimes referred to as Avery factors, in addition to the medical evidence, in evaluating a claimant's symptoms of pain:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate his symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of his symptoms; (6) any measures the clamant uses or has used to relieve symptoms; and (7) other factors concerning the claimant's limitations and restrictions due to pain or other symptoms.

Ranfos v. Massanari, 2002 WL 91873, at *8 (D.N.H. Jan. 24, 2002) (citing § 404.1529(c)(3)).

"The credibility determination by the ALJ, who observed the claimant, evaluated the demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Ordinarily, the ALJ's findings are conclusive when supported with substantial evidence. See Nguyen v. Chater,

172 F.3d 31, 35 (1st Cir. 1999).  The ALJ's findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Id.

The ALJ found that Rallis's complaints of functionally limiting pain were only partially credible.  He concluded that she retained the residual functional capacity to do light and sedentary work, with some additional restrictions, and that work existed in the relevant economies that she could do.  Rallis contends that the ALJ failed to consider all of the evidence pertinent to her pain symptoms and concluded that she was not disabled based on the legally erroneous standard that her limitations due to pain did not prevent her from all daily activities.

The ALJ's consideration of Rallis's objective medical evidence selectively highlights evidence of a lack of physical impairments while ignoring the vast bulk of the medical evidence which thoroughly documents Rallis's chronic back condition.  In addition, the ALJ misconstrued some of the evidence, stating that all of her doctors recommended aggressive physical therapy, when only Dr. Miller made that recommendation, and suggesting that her straight leg tests were well within normal, when the reported test results indicate limitations.  The ALJ noted that the bulge at L4-5 was no longer evidence in the MRI done in 1999, six

13

months after her eligible status expired, which does not rule out the earlier MRI results showing a bulge of moderate size at L4-5, along with other spinal abnormalities that are documented throughout the record.

The ALJ also noted that Rallis testified that steroid injections were not effective in relieving her pain, despite the fact that one injection gave her two weeks of relief. The ALJ failed to note or distinguish Dr. Miller's report in August of 1999 that Rallis had undergone multiple injections without any enduring relief. The ALJ appeared to put particular emphasis on Dr. Miller's report in August of 1999 that Rallis had repeatedly solicited a disability letter from him, without explaining the significance of that information. To the extent the ALJ found that Rallis was not disabled based on his findings concerning the medical evidence, his findings are not entitled to deference as they in part selectively ignored and misconstrued the evidence. See Nguyen, 172 F.3d at 35.

The ALJ concluded that "[w]hile the record reflects that [Rallis] may have some difficulty performing her daily activities, her back and neck pain do not limit all such activities." Record at 24-25. The ALJ found that despite her pain Rallis was able to visit with family, take trips to local greenhouses, although she could no longer garden herself, do

14

laundry with assistance from her family, and accompany her husband to do shopping. The ALJ further found that Rallis spent her days reading and watching television. The ALJ did not consider Rallis's and her husband's testimony about the change in her activities since the accident or her inability to do housework or cook anything but simple meals.

Even if the ALJ's limited findings as to Rallis's daily activities were properly supported, his conclusion that she was not disabled cannot stand if he applied an erroneous legal standard. See Nguyen, 172 F.3d at 35. A social security claimant need not be completely disabled from all activities to be disabled for purposes of social security benefits. See, e.g., Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1998); Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996); Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981). A claimant need not be an invalid to be disabled for purposes of social security benefits, and activities in pursuit of important goals such as household tasks, done while enduring pain, do not necessarily undermine a finding of disability. See Balsamo, 142 F.3d at 81.

Because it appears that the ALJ concluded that Rallis was not disabled based in part on findings that ignored or misconstrued the record and because her back and neck pain did not limit all of her activities, the decision is based upon legal

15

and factual error.  Therefore, the decision is remanded for further proceedings.  See Seavey, 276 F.3d at 11-12.

## Conclusion

For the foregoing reasons, the plaintiff's motion to reverse (document no. 6) is granted only to the extent that the case is remanded for further proceedings.  The Commissioner's motion to affirm (document no. 7) is denied.

As this is a sentence six remand, the clerk of court shall enter judgment and close the case.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

March 29, 2002

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire