HEANEY, Circuit Judge,
dissenting.
I would remand this case for rehearing because the ALJ failed to fully and fairly develop the record prior to determining Baker’s eligibility for social security disability payments. Thus, I respectfully dissent from the majority opinion affirming the Commissioner's denial of benefits.
It is settled law in this circuit that social security hearings are nonadversarial, and the ALJ is responsible, independent of the claimant’s burden, for fully and fairly developing the record. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir.2004). The duty to develop the record extends to cases like this one where the claimant is represented by counsel. Id. “The ALJ possesses no interest in denying benefits and must act neutrally in developing the record.” Id. Here, the ALJ failed in several instances to fully and fairly develop the record.
The ALJ found that Baker had not engaged in substantial gainful employment since the alleged onset of his disability in February 2002. The ALJ further found that Baker had a combination of impairments considered severe, but not medically equal to a listed impairment, and finally that, pursuant to the Medical-Vocational rule 200.10, he was not disabled.
The ALJ found that Baker could “perform the full range of light work,” (App. at 63), but failed to make a finding regarding Baker’s ability to return to his own past relevant work. This omission was serious and prejudicial, because if Baker could not return to his past relevant work, the burden would shift to the Commissioner to prove that there was other work in the national economy that Baker could perform in light of his severe impairments.[9] *896 Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir.1996).
Baker’s principal occupation from May 1983 to September 2000 was that of a tree trimmer. (Admin. R. at 106.) Until Baker fell and was injured in September 2000, he did all of the tree work himself. {Id. at 384.) Thereafter, he was limited to supervising others in the tree trimming operation. {Id. at 377-382.) His work as a tree trimmer is classified as heavy (Dictionary of Occupational Titles, § 408-.664-010), and clearly beyond his current functional capacity. Had the ALJ found that tree trimming was Baker’s past relevant work, the burden would have shifted to the Commissioner, as noted above.
Prior to working as a tree trimmer, Baker worked as an assembly line worker in a hog processing plant from October 1970 to May 1983. (Admin. R. at 106, 110.) This job is also classified as heavy, and therefore beyond Baker’s present capabilities. (Dictionary of Occupational Titles, § 525.381-014.) Thus, from 1970 to 2000, Baker’s past relevant work was in positions classified as “heavy,” and beyond his current functional capacity.
In addition to the full-time occupations discussed above, Baker supplemented his income with part-time jobs. From December 1994 to December 1999, Baker worked approximately fifteen hours a week as a laundry attendant. (Admin. R. at 106, 109.) From December 1999 to September 2002, Baker worked approximately thirty-three hours per week as an automobile detailer for Enterprise Rent A Car. {Id. at 106, 108.) The ALJ failed to determine whether Baker was capable of performing the duties of either of these past jobs.
The ALJ also erred in holding that Baker was not disabled because he took no pain medication. The ALJ’s statement that Baker “takes no medications for his pain in spite of rather significant complaints” is only half true. (App. at 61.) The record is replete with references to pain medications prescribed by Baker’s treating physicians and nothing supports an inference that he did not take the prescribed drugs.[10] Baker did report on a Social Security Administration form that he was not “presently” taking pain medication. (Admin. R. at 128.) But Baker also testified that he quit taking the pain medication because it did not relieve his pain. {Id. at 384.) Quitting pain medication because is does not work is far different from quitting it because he was not in pain. In Baumgarten, 75 F.3d at 369, the claimant testified that she quit taking prescription pain medication because it was no more effective than Tylenol. This court held that the ALJ’s “erroneous assertion” that the claimant provided no reasonable explanation for discontinuing the pain medication called the ALJ’s ultimate decision into doubt. Id.
As the majority notes, the ALJ also incorrectly determined that Baker’s complaints of pain were inconsistent with his performance of activities of daily living. The ALJ improperly embellished Baker’s activities, noting that he did a wide variety of household chores and outdoor tasks, including car washing, mowing the lawn, and raking leaves. As to household chores, Baker testified:
I don’t do much around the house. I help my wife barely with the dishes. I take them out of the sink and I stand at the counter. I hand them — the dishes *897 to my wife, she bends over and leans over to put the dishes in the dishwasher. And once in a while I’ll wash the pots and pans at the kitchen sink. And about 15, 20 minutes of doing that it’s just— it’s really hard on me. I got to quit doing it.
(Admin. R. at 381.) The ALJ asked no further questions regarding household chores. The ALJ made its determination regarding car washing, mowing the lawn, and raking leaves based on the daily activities questionnaire. In answering the questionnaire, Baker stated that he “rarely ” washed the car, “rarely ” mowed the lawn, and “rarely ” raked the leaves. (Id. at 124 (emphasis added).) Certainly it was improper for the ALJ to omit the fact that Baker only rarely did these chores.
Furthermore, this court has consistently held that “the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.” Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995); see also Baumgarten, 75 F.3d at 369 (finding the claimant’s ability to make the bed, prepare food, perform light housekeeping, grocery shop, and visit friends an unpersuasive reason to deny benefits). Accordingly, Baker’s failure to take prescription pain medication and his rare performance of daily activities do not support the ALJ’s conclusion that Baker is not entitled to disability benefits.
The ALJ gave significant weight to the residual functional capacity evaluation, which stated in part:
1.This patient exhibited a sub maximal effort throughout the functional capacity evaluation. Mr. Baker passed 62% of the validity criteria 36/58 validity criteria scored.... The results of the functional capacity evaluation will not provide an accurate aid in the medical management and vocational planning for this patient.
2. Mr. Baker demonstrated during the functional capacity evaluation, an ability to work at a Sedentary physical demand level. This would allow an individual to perform occasional material handling activities with 10 lbs and less weight, 1-33% of the day. This is according to the Dictionary of Occupational Titles, U.S. Department of Labor, 1991. The results are considered this patient’s minimal level of function and his maximal level of function must be left to conjecture....
3. Estimated Physical Demand Level— The results of the functional capacity evaluation demonstrated an invalid result. Mr. Baker during the Occasional Material handling tests demonstrated the ability to perform material handling activities at a Sedentary Level, 10 lbs and less, however, the results of the Occasional material handling tests were invalid.... This patient will be placed at a LighL-Medium Physical Demand Level. This would allow an individual to perform occasional material handling activities with 35 lbs and less. This is according to the Dictionary of Occupational Titles, U.S. Department of Labor, 1991.
(Commissioner’s Factual Addendum for Appellant’s Br. at 69B.)
The district court rejected the ALJ’s finding and questioned the validity of the test. The district court concluded that it was highly improbable that a 50-year-old man with an eighth grade education could manipulate the test, that he could have a valid effort on 62% of the tests and invalid on the remainder. In plain language, the court opined that it could not accept the tester’s conclusion that Baker had selectively cheated on the test, and refused to give the test weight in its decision. To buttress its opinion, the district court im *898 properly considered and quoted from a “treatise” by Gary L. Soderberg. Irrespective of the Soderberg article, the record sufficiently raises concerns regarding the FCE as a basis for awarding or denying disability benefits. This question deserves careful study and consideration by the ALJ and the Commissioner in the first instance.
Thus, I would remand to the ALJ for a hearing consistent with this dissent, that includes an opportunity to fully explore the propriety of the use of the FCE in this case. The ALJ has the responsibility to fully and fairly develop the record, recognizing that because Baker cannot return to his past relevant work, the burden shifts to the Commissioner to show that there are jobs in the national or regional economy in meaningful numbers that Baker can perform despite his disabilities.

. The initial examiner for the Social Security Administration determined that Baker "is not able to return to his previous vocation.” (Admin. R. at 140.)

. See, e.g., Admin. Rec. at 143-145, 148-150, 157-158, 160, 175, 180, 184, 189, 192, 202, 216.