**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-2134

Phyllis J. Titus,                        *
                                         *
        Appellant,                       *
                                         * Appeal   from   the   United
States
        v.                               * District Court for the
                                         * Southern District of Iowa.
John J. Callahan, Ph.D., Commissioner    *
of Social Security,                      *
                                         *
        Appellee.                        *

Submitted:  November 20, 1997

Filed:  December 23, 1997

Before BEAM, HEANEY, and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

     Phyllis J. Titus appeals from the district court's
grant of  summary judgment in favor of the Commissioner
of Social Security's denial of Titus's claim for
supplemental security income (SSI) benefits.  Titus v.
Callahan, No. 3-96-CV-80124 (S.D. Iowa Apr. 14, 1997).
We reverse and remand to the district court with
directions to return Titus's claim to the Commissioner
for an additional hearing and redetermination of her
eligibility for SSI benefits.

The relevant facts of this case are found in the record compiled by the administrative law judge (ALJ). The record established that Titus, born January 27, 1946, had a tenth-grade education and a full-scale IQ of 71, placing her at the lowest end of the borderline range of intellectual functioning. Titus had worked at several menial jobs before applying for SSI benefits, including that of hand packager, salvage laborer, motel cleaner, commercial cleaner, and production assembler. None of the skills acquired on these jobs was transferrable. Titus never made over $2,100 a year, and she has made over $1,000 a year only twice since 1967. She has not been substantially employed since October 5, 1990.

The ALJ determined that Titus had a major depressive disorder, possible cirrhosis of the liver, a history of alcohol abuse, status post bilateral carpal tunnel release surgery, and adult onset diabetes. After listening to the vocational expert's (VE) testimony and engaging in dialogue with the VE and Titus's attorney, the ALJ found that although Titus could no longer perform her past work, she could perform other clerical jobs. He found, based upon the VE's opinion, that Titus could work at three clerical-type jobs of which there were significant numbers in the local and national economy. The VE specifically based his opinion on the categories of jobs enumerated in the Dictionary of Occupational Titles (DOT) (4th ed. vol. I 1991): addresser, officer helper, and document preparer. Titus has no past experience doing this type of work. The

district court affirmed the decision of the Commissioner and Titus appeals.

## II.

The applicable standard of review is whether, after reviewing the entire record, there is substantial evidence that supports the Commissioner's finding of no disability within the meaning of the Social Security Act. Hogg v. Shalala, 45 F.3d 276, 278 (8th

Cir. 1995) (citations omitted). For the reasons set forth below, we do not believe that substantial evidence supports such a finding.

We acknowledge that although Titus has no past experience doing the type of clerical work recommended by the VE, the record indicates that Titus has the physical strength to perform each of them. The record does not support a finding, however, that she has the mathematical, reasoning, or language skills to perform the duties on a full-time basis in a sometimes competitive and stressful environment in the working world. See e.g., Detrick v. Callahan, 115 F.3d 573, 574–75 (8th Cir. 1997) (describing as "a stretch of the imagination" the belief that one will succeed in certain jobs, on a day-to-day basis, where one has limited work skills, limited education, and physical disabilities); McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc) (finding that an ALJ must determine whether one applying for SSI has "the ability to perform the requisite physical acts day in and day out in the sometimes competitive and stressful conditions in which real people work in the real world").

For example, to work as an addresser, DOT 209.587-010, Titus would be required to address "by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing" and she "[m]ay sort mail." Dictionary of Occupational Titles, (vol. I), supra, at 180. Additionally, the DOT's Guide for Occupational Exploration (GOE) mandates an addresser to be classified at mathematical development level 1, which requires the ability to:

4

Add and subtract two digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

<u>Dictionary of Occupational Titles</u> (4th ed. vol. II 1991), GOE's Scale of General Educational Development, App. C, at 1011.[1]  An addresser is classified at language development level 2, requiring the following skills:

> Reading:
>> Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
> Writing:
>> Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
> Speaking:
>> Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses.

<u>Id.</u>  There is no indication in the record that Titus possesses these job skills.[2]

---

[1]The General Educational Development component of the GOE describes the educational development requirements for satisfactory performance at various jobs.

[2]It is important to note that the requirements for this job category were last determined in 1977. <u>Dictionary of Occupational Titles</u>, (vol. I), <u>supra</u>, at 180.  Given the widespread use of computers today for elementary clerical tasks, basic computer knowledge may also be required to perform effectively at this position.

Additionally, the second job, that of officer helper, DOT 239.567-010,[3] and the third job, that of document preparer, DOT 249.587-018,[4] are even more complex than

[3]The DOT describes the position as follows:

Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

Dictionary of Occupational Titles, (vol. I), supra, at 210.

[4]The DOT describes this position as:

Prepares documents such as brochures, pamphlets, and catalogs, for microfilming, using paper cutting, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name

7

the job of an addresser.  Most notably, an office helper is required to have a mathematical development of level 2 rather than level 1.  The job of document preparer provides for a reasoning development of level 3,[5] rather than level 2, that required of an addresser or office helper.  In the absence of a showing that Titus has the skills to be an addresser, evidence that she has the skills to be an office helper or document preparer are certainly absent from the record.

Because Titus has adequately shown that she cannot return to her former employment, the Commissioner has the burden of proof  in demonstrating that Titus can secure a job in the national economy. See McCoy, 683 F.2d at 1146-1147.  The Commissioner must present substantial evidence that Titus can, in fact, perform the duties of these positions.  Id. at 1147.  At this point, the record is incomplete regarding the specific skills required by the positions recommended by the VE.  The Commissioner must

---

and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

Id. at 219.

[5]According to the Scale of General Educational Development, level 3 reasoning development is described as follows:

Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

Dictionary of Occupational Titles (vol. II), supra, App. C, at 1011.

therefore make a specific finding on the issue before the court can accept or reject his determination.

We are also concerned about the ALJ's determination under the present facts that Titus will have no problem working and getting along with others in the workplace,

despite strong indications by the VE to the contrary. After reviewing extensive dialogue between the ALJ, the VE, and Titus's attorney, we ask the Commissioner to consider the VE's conclusions concerning Titus's workplace difficulties.[6]

---

[6]The ALJ posed the following hypothetical to the VE:

Q (ALJ) My next hypothetical would be an individual . . . [who] would have additional limitations to the extent that she would be able to remember locations and work-like procedures, as well as understand and remember and carry out very short and simple instructions. However, she might be nearly moderately limited in her ability to . . . remember and carry out detailed instructions. She would be able to perform activities within a schedule, sustain an ordinary work routine, work in coordination with or in proximity to others and make simple work related decisions. However, she might experience moderate difficulty in maintaining attention and concentration as well as completing a normal workday and/or work week. She seems competent in most areas relating to social interaction but might experience moderate difficulties accepting instructions and responding appropriately to criticism. She seems most competent in the areas of adaptation, but might experience nearly moderate limitations in her ability to set realistic goals for herself or make plans independently of others. I assume this individual cannot return to past relevant work? Would that be correct?

A (VE) Yes.

Q (ALJ) Would there remain unskilled jobs which have been administratively noticed which the claimant could perform within the limitations of the hypothetical?

A (VE) I'm not sure I can give you a yes or no. Many of these factors, of course, are significant to employment regardless of what the employment involves. As far as the physical exertion, it would seem to me that someone having moderate difficulty accepting constructive

10

criticism or accepting instructions would not be able to do these things on a consistent basis. I guess with that interpretation, I question whether this person would be able to maintain competitive employment, that, and those factors and also the ability to work within a schedule, I think would also be significant.

(Admin. Tr. at 317-18).

The claimant's attorney then posed the following question and received the following answer:

ATTY: I did note that you inserted one word, though, that was not in Dr. Chang's report, right at the point on the second page of the two-page exhibit, which would be 34, page two, the report reads, "She seems able to perform activities within a schedule sustain an ordinary routine," and it goes on. You inserted the word "work" and so that it read "ordinary work routine." My hypothetical would be take the word "work" out, leave in "sustain an ordinary routine," and read that in conjunction with what later appears, which is moderate difficulties in completing a normal workday and work week. The only change then, in my hypothetical, is to take the words, "ordinary work routine," and take "work" out.

ALJ: Actually, I believe I did not include work routine.

ATTY: You did, Your Honor. I guess my question is, on the one hand you've got instructions saying, she can go an ordinary work routine, a couple sentences later saying she would have moderate difficulties in completing a normal workday and work week. Okay? Does it make any difference to take the word "work" out?

VE: Not to me. I guess what my interpretation of that whole thing is that she would not be able to do these things on a consistent basis.

Id. at 319.

11

concerning whether Titus could adequately perform in the workplace.  He stated:

At the hearing, the undersigned also posed a hypothetical question to the vocational expert which included the physical limitations included in her residual functional capacity and also the exact wording concerning her mental functional abilities previously noted herein and contained in Exhibit 34. The vocational expert responded that the claimant would not be able to engage in competitive employment due to the stated difficulty with accepting criticism and instruction, and the stated inability to work within a schedule. However, the claimant has had numerous jobs, including her most recent one, which involved accepting criticism and instruction and working in a schedule, and was able to perform in those jobs. Therefore, there is no sound basis for those limitations, and the hypothetical question based on the claimant's statements is considered to be a more accurate expression of her residual functional capacity.

Id. at 24.

The ALJ's reasons for rejecting the expert's testimony are not persuasive. The record indicates that her past jobs were menial and part time, and that Titus had great difficulty working with others. Although the ALJ might reach the same conclusion after considering Titus's previous employment history and the skills required for the three clerical jobs discussed above, we are unwilling to make that conclusion until the full record is developed.

### III.

We remand to the district court with directions to return Titus's claim to the Commissioner for a determination of whether Titus, in light of her education,

experience, job skills, and cognitive functioning, is able to perform the duties required in the stated positions or other positions on a full-time basis.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.