Richard **CHARBONNEAU**, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner, **Social Security Administration,** Defendant.

Civil Action No. 99–30013–MAP.

United States District Court, D. Massachusetts.

Nov. 24, 1999.

Richard C. Roth, Springfield, MA, for plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for defendant.

*MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER*

(Docket Nos. 5 & 7)

PONSOR, District Judge.

## I. *INTRODUCTION*

Pursuant to 42 U.S.C. § 405(g), this action seeks review of the final decision

of the defendant Commissioner of Social Security denying plaintiff, Richard Charbonneau, Social Security benefits. The plaintiff has moved to reverse the Commissioner's decision, contending that it is not supported by substantial evidence. The defendant moves to affirm the decision, arguing that substantial evidence on the record supported it. This court will deny both motions and will remand the case to the Administrative Law Judge to permit a more accurate inquiry regarding plaintiff's non-exertional limitations in the hypothetical question to the vocational expert.

## II. *PROCEDURAL AND FACTUAL BACKGROUND*

Richard Charbonneau is 39 years old, has a limited education and worked as a machine operator in a paper factory from 1977 through 1994. He was injured at work on September 19, 1994 when he felt a pop in his back while lifting two fifty-pound boxes. He sought treatment for his lower-back injury at a facility called the Work Connection at Holyoke Hospital. He was allowed to return to work on September 26, 1994 with instructions that he not lift more than 15 to 20 pounds, be given a five-minute break every half-hour, and be permitted to sit or stand at will. He worked on and off in this way until he stopped completely on December 28, 1994. He has not worked since that time. Charbonneau received worker's compensation payments from November 18, 1994 until a final settlement of his claims was reached in December 1997.

Charbonneau's initial treatment at Holyoke Hospital in September 1994 revealed that he suffered from disc herniation at L3-4 and L4-5, spondylolysis (degeneration of the vertebra) at L4, and degenerative arthritis at L3-4 and L4-5. He was treated at the Work Connection until March 15, 1995, including three months of physical therapy. While there he was referred to an orthopedic surgeon, Dr. R. Scott Cowan. Dr. Cowan remains Charbonneau's only treating physician. After a few months of non-surgical treatments, Dr. Cowan recommended spinal surgery, which he performed on September 21, 1995 at Baystate Medical Center. Beginning October 6, 1995, Charbonneau underwent a six week physical therapy program with some success. He received six months more of physical therapy between January and June 1996, but this time the therapist reported no improvement in Charbonneau's pain or functional status.

As of March 31, 1997, Dr. Cowan reported that Charbonneau was making a very slow recovery and that he continued to have persistent back pain. In June of 1997, Dr. Sewall, an orthopedic specialist whom the worker's compensation insurer had retained to examine Charbonneau, cleared him for light duty work and noted that he would need a job where he did not have to do "prolonged sitting, standing, or walking." Record of Proceedings, Docket No. 3 at 376 (hereinafter "Record"). Two Disability Determination Service ("DDS") physicians also examined Charbonneau's medical file; they both concluded that he retained the capacity to do light work and had no limitations on his ability to sit or stand through the workday. Record at 343–50; 351–58. In contrast, on December 22, 1997 and January 8, 1998, Dr. Cowan, the treating physician, wrote to Charbonneau's attorney describing Charbonneau as being "totally disabled for all substantial gainful employment based on his back condition, and his inability to perform any sort of heavy labor, and his inability to sit for any length of time." Record at 695.

Charbonneau was also evaluated by a psychiatrist, Dr. Bloomberg. He concluded that plaintiff had a developmental disorder, which included an inability to write or do arithmetic. Record at 362 (noting that Charbonneau "could not subtract 65 cents from $1.00").

On February 19, 1997, plaintiff filed for Social Security Disability benefits alleging that he had been disabled since December

28, 1994 as a result of his work-related lower-back injury. His claim was initially denied on March 14, 1997. He filed for reconsideration, and that was denied on May 26, 1997. He requested a hearing, and one was held on January 28, 1998 before Administrative Law Judge John F. Aronson ("ALJ"). The ALJ denied his claim and plaintiff requested that the Appeals Council review this decision. In a decision dated December 15, 1998 the Appeals Council declined to review the ALJ's decision, exhausting the plaintiff's administrative remedies.

## III. *STANDARD OF REVIEW*

This court treats the Commissioner's findings as conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Manso–Pizarro v. Secretary of Health & Human Services,* 76 F.3d 15, 16 (1st Cir.1996) (per curiam). Substantial evidence "means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In other words, upon reviewing the record as a whole, this court must uphold the Commissioner's decision if a reasonable mind would find adequate support for his conclusion. *Rodriguez v. Secretary of Health & Human Services,* 647 F.2d 218, 222 (1st Cir.1981). Even if the record could arguably justify a different conclusion, this court must affirm the decision, "so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health & Human Services,* 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

## IV. *DISCUSSION*

Under the Social Security Act, 42 U.S.C. § 423, a "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A)(1999).

An individual is found to be under a disability only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A)(1999).

■ To make disability determinations, the Commissioner has adopted a five-step "sequential evaluation" process. 20 C.F.R. §§ 404.1520, 416.920 (1999); *Bowen v. City of New York,* 476 U.S. 467, 470–73, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The Commissioner satisfies this five-step process by asking five questions in the following order:

1) [I]s the claimant currently employed? If he is, the claimant is automatically considered not disabled.

2) [D]oes the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

3) [D]oes the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1 [in subpart P of the regulations, 20 C.F.R. §§ 404.1520(d), 416.920(d) ]? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

4) [D]oes the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

5) [Given the claimant's age, education, past work experience and residual functioning capacity, *see* C.F.R. § 404.1520(f),] does the claimant's impairment prevent him from performing

other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 6–7 (1st Cir. 1982). The burden is on claimant to show that he is disabled under the fourth test, *i.e.,* he cannot work at his former job. *Id.* However, the Commissioner "has the burden of showing the claimant has not satisfied the fifth test; that is to say, the [Commissioner] must show that there are other jobs in the economy that claimant can nonetheless perform." *Id.* ·

The parties agree that the dispute in this case centers on step five: did the Commissioner satisfy his burden "of coming forward with evidence of specific jobs in the national economy that [plaintiff] can perform." *Arocho v. Secretary of Health & Human Services,* 670 F.2d 374, 375 (1st Cir.1982). The ALJ found that "although the claimant's exertional limitations do not allow [Charbonneau] to perform the full range of light and sedentary work, ... there are a significant number of jobs in the national economy which he could perform" such as assembler, inspector and sorter. Record at 19.

■ Plaintiff argues that the ALJ's step five determination was mistaken for the following reasons. First, plaintiff argues that the ALJ's finding—that "the plaintiff could sit, stand or work, but requires a job that allows him to change positions as needed," *see* Record at 17—failed to give proper weight to plaintiff's treating physician's report and instead relied too heavily on the reports by the DDS's non-examining physicians.

The court disagrees. In its finding, the ALJ gave proper weight to the treating physician's reports and did not exclusively rely on the DDS's consulting physicians. *See* Record at 15–17. Although the treating physician's letter to the ALJ after the hearing claimed that plaintiff was ·"totally disabled," a reasonable interpretation of Dr. Cowan's records supports the ALJ's conclusion that plaintiff is not completely unable to work but that he is restricted to light or sedentary work. *See* Record at 325, 341, 695, 186–187, 190. Moreover, even though the ALJ reported the finding of the DDS physicians that plaintiff was capable of light exertional work without limitation in the ability to sit stand or walk, the ALJ nonetheless concluded plaintiff could perform only sedentary level work with the need to alternate positions as necessary. *See* Record at 16, 19. Thus, the ALJ neither ignored plaintiff's treating physician's reports nor exclusively relied on the DDS reviewers.

■ Second, plaintiff argues that the ALJ improperly discounted plaintiff's subjective complaints of pain in his step five determination. Here the parties disagree over the application of the criteria for determining the credibility of subjective pain complaints. The criteria are set forth in *Avery v. Secretary of Health & Human Services,* 797 F.2d 19, 22–23 (1st Cir.1986). Under *Avery,* if there are subjective symptoms of pain not supported by objective medical evidence, the ALJ must compare these complaints with the physician's reports, look into plaintiff's daily activities, and weigh his functional abilities as demonstrated on testing and evaluation. *Id.*

Under these tests, there is substantial evidence that plaintiff's pain was not disabling. Dr. Cowan, for example, referred to the lack of medication since the surgery, *see* Record at 188, 329, 341, 338 (noting in March 1997 that plaintiff's backache did not require medication but did bother him). In addition, the doctor's treatment notes and records fail to refer to any substantial levels of pain, but rather cite "discomfort" or a "backache." Record at 188, 341. Only recently, in a letter sent after the hearing, did Dr. Cowan refer to pain as disabling. Record at 695. Moreover, while the record shows that plaintiff complained of "knotlike" feelings, "tightness" and "constant soreness," plaintiff cannot explain his failure to take pain medication. Record at 384, 673, 374. Finally other

examining sources considered plaintiff's complaints of pain when they assessed his work capability, and yet they still found that he was able to do light sedentary work. *See* Record at 374, 376, 384, 386, 672, 674–75. Thus, this court finds that the ALJ had substantial evidence to conclude that plaintiff's subjective complaints of pain were not sufficiently credible and that he properly discounted them in his step five determination.

■ Plaintiff's third and fourth concern will be taken together since they involve the issue of non-exertional limitations. Plaintiff argues that the ALJ failed to give proper weight to plaintiff's non-exertional limitations such as his inability to read, write and do arithmetic; as a result, the ALJ provided a flawed hypothetical to the vocational expert. Moreover, plaintiff claims, the hypothetical was distorted because it made unsupported assumptions about Charbonneau's physical ability.

Regarding the supposedly incorrect assumptions about physical ability, the ALJ reported in his findings that the questioning of the vocational expert proceeded along the following lines.

> [T]he vocational expert was asked to assume that an individual, such as the claimant, who is 37 years old and has a limited education and a limited ability to read and write[,] is limited to the extent he should not lift more than 10 pounds occasionally or 5 pounds frequently. He was asked to assume the claimant can sit, stand or walk; occasionally, climb and stoop; and frequently balance, kneel, crouch and crawl but requires work that allows him to change positions as needed.

ALJ Decision, Record at 18. Plaintiff's arguments to the court notwithstanding, all the *physical* limitations in the hypothetical are supported by the record. There is a discrepancy, however, between what the ALJ asked the vocational expert at the hearing and what he reported in his findings. The hearing transcript reveals that he asked the vocational expert to consider an individual who could lift no more than ten pounds frequently and twenty pounds occasionally, *see* Record at 64, while his actual findings report the weights as ten and five pounds respectively. *See* Record at 19. On remand the ALJ is to use the physical assumptions contained in his findings.

On the other hand, the hypothetical's assumptions regarding Charbonneau's non-exertional limitations are incorrect. There is substantial evidence that plaintiff's "limited education and limited ability to read and write" are more profound than the hypothetical assumes. *See* Record at 360. In addition, the hypothetical completely ignores the fact that plaintiff "can do no arithmetic at all." Record at 362. The latter omission is especially significant in light of the types of jobs the ALJ's expert suggests that plaintiff can do, such as assembler, inspector and sorter. For each of these jobs, the Dictionary of Occupational Titles, the prime vocational source cited in 20 C.F.R. § 404.1566(d)(1) for jobs as assembler, inspector, and sorter, lists a minimal educational development that includes the following math skills:

> Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

Memorandum in Support of Plaintiff's Judgment on the Pleadings, Docket No. 6, Exhibit 1 at 1. In addition, these jobs require at a minimum the ability to write as follows: "Print simple sentences containing subject, verb, object and series of numbers, names and addresses." *Id.* Since there is no substantial evidence that plaintiff can write or do arithmetic at this level, the hypothetical inaccurately reflects Charbonneau's non-exertional limitations. As a result, the ALJ's decision concludes without substantial support that plaintiff can perform the job of assembler, inspec-

**104**

tor or sorter. *See Titus v. Callahan*, 133 F.3d 561, 562 (8th Cir.1997) (finding that although plaintiff had physical strength to do jobs that vocational expert recommended, "[t]he record does not support a finding that ... that she has the mathematical, reasoning, or language skills" to perform duties recommended jobs required).

## V. CONCLUSION

The ALJ posed an incomplete hypothetical when he left out plaintiff's non-exertional limitations. Responses to a proper hypothetical might well alter the Commissioner's conclusion that plaintiff is capable of some employment. This court can discern no substantial evidence that the sorts of sedentary jobs the Commissioner finds plaintiff can do can actually be performed by someone with plaintiff's very limited reading and non-existent mathematical skills. For the reasons stated, plaintiff's motion to reverse and the Commissioner's motion to affirm are both DENIED. Instead, this case is REMANDED with instructions to the ALJ to reopen the hearing and reformulate the hypothetical question to the vocational expert so that it includes an accurate reference to plaintiff's non-exertional limitations.

A separate order will issue.

## ORDER

For the reasons stated in the accompanying Memorandum, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) and Defendant's Motion to Affirm the Decision of the Commissioner (Docket No: 7) are both hereby DENIED. The case is REMANDED to the Commissioner for further proceedings consistent with this decision. In the interest in furthering fresh review of all the evidence, and consistent with the practice of the Court of Appeals in remanding district court decisions, a new Administrative Law Judge will be assigned to this case on remand.